## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL KELLY,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.: 2:15-cv-6668 (DS)** |
| | : | |
| **BUSINESS INFORMATION GROUP,** | : | |
| **INC.** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## <u>OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>

The pending defense motion for judgment on the pleadings (Dk. 38) should be denied. Coming ten months after the Complaint was filed (Dk.1) and six months after it was answered (Dk. 13), the motion incorrectly describes the substance and nature of the claim therein challenged.

## I.      BACKGROUND

Business Information Group, Inc. ("B.I.G."), is a consumer reporting agency and reseller that sells employment background checks—consumer reports—that contain criminal records so incomplete that even it is incapable of determining whether or not those records actually match the consumer about whom the report regards. For Mr. Kelly, that meant the loss of his right to fully perform his job. This was the very concern that Congress considered when enacting the Fair Credit Reporting Act ("FCRA"), as codified at 15 U.S.C. § 1681k(a) in 1970:

> Employers were placing increasing reliance on consumer reporting agencies to obtain information on the backgrounds of prospective employees. Congress found that in too many instances agencies were reporting inaccurate information that was adversely affecting the ability of individuals to obtain employment. As

> Representative Sullivan remarked, "with the trend toward ... the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal 'blips' and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable." 116 Cong. Rec. 36570 (1970).

*Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001).[1] Since that time, nearly every court to have considered the completeness and currency provision challenged in Defendant's Motion has found that public record employment reports are incomplete and do not satisfy § 1681k(a)(2)'s "strict procedures" requirement if the data included in the records reported is so incomplete that those records cannot be matched to the correct consumer. *See, e.g.*, *Poore v. Sterling Testing Sys., Inc.*, 410 F. Supp. 2d 557, 572 (E.D. Ky. 2006) ("A reasonable juror could conclude that this item was not complete and that this item did not reflect the current public record status of the DUI conviction since the report did not include the actual name, birth date or social security number of the person who was convicted of the crime."); *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 1574048, at *12 (E.D. Va. Apr. 18, 2016) ("An assessment of the FRCA's statutory purpose provides some help in analyzing the complete and up to date issue. . . . in light of the purposes of the FCRA, it seems that the 'necessary parts' of a public record must be sufficient to connect a particular public record to a particular consumer."); *Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 330, 332 (D. Conn. 2009) (denying summary judgment under § 1681k(a)(2) where "Verifications' report linked Adams to convictions attributed to a person with a different name in a different state[.]"). Here, B.I.G. furnished a consumer report containing a civil judgment regarding the Plaintiff, Michael Kelly, belonging to his son, Michael Kelly and did so because the public

---

[1] These consumer oriented objectives support a liberal construction of the FCRA. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

information (personal identifiers *other than* social security number and date of birth) it reported was not sufficient to determine to whom that judgment belonged.

Plaintiff has alleged as his class claim that Defendant violated the FCRA, 15 U.S.C. § 1681k(a), because it neither (1) maintains *strict procedures* ex ante designed to ensure that it only furnishes complete and up-to-date public records nor (2) sends consumers *notice* that it was selling adverse public records data about them. (Dk. 1 ¶¶ 13–20.) Plaintiff alleges that the false report Defendant alone sold to his prospective employer caused him actual harm and injury. (*Id.* ¶ 15.) But the relevant point is not that the specific report regarding Mr. Kelly contained incomplete public records, though it did, but rather whether the procedures B.I.G. followed (maintained) were designed to ensure that it did not sell reports that were incomplete. 15 U.S.C. § 1681k(a)(2). Plainly, the procedures B.I.G. follows were not so designed, and thus it necessarily should have sent the notices required by § 1681k(a)(1). There is no other way to read the Complaint and no other way to read the statutory text.[2]

## II.    LEGAL STANDARD

Defendant moves for judgment on the pleadings under Fed. R. Civ. P. 12(c). Under Rule 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). Judgment, however, may only be granted where the moving party clearly establishes that the pleadings present no material issues of fact and also that it is entitled to judgment as a matter of law. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988); *see also Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). All facts set forth in the pleadings and reasonable

---

[2] A point on which the Parties fully agree is that the Court should read a statute by its text. (Dk. 38-1, at 4).

inferences therefrom must be viewed in the light most favorable to the non-moving party. *Sikirica*, 416 F.3d at 220.

### III.    FACTS

Here the basic allegations satisfy that modest standard, as Plaintiff has sufficiently alleged a cognizable claim under 15 U.S.C. § 1681k(a). He alleges that Defendant is governed by the FCRA, was required to comply with § 1681k(a), that § 1681k(a)(2) does not apply to its reports, and that it does not send contemporaneous § 1681k(a)(1) notices.

B.I.G. is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) and is also a "reseller" that assembles and merges information contained in the databases of other consumer reporting agencies and resells the data to third parties, as defined in 15 U.S.C. § 1681a(u). (Dk. 1 ¶ 8.) Defendant does not maintain procedures designed to insure public record information that is likely to have an adverse effect on a consumer's ability to obtain employment is complete and up-to-date. (*Id*. ¶ 14.) Defendant did not attempt to follow the option available at 15 U.S.C. §1681k(a)(2), which requires a consumer reporting agency to maintain strict procedures designed to ensure that its public records reporting is complete and up to date and thus § 1681k(a)(2) is inapplicable to the consumer reports at issue in this case. (*Id*. ¶¶ 17, 18.) Despite the inapplicability of § 1681k(a)(2) to the form of public records information B.I.G. sold (and resold), it routinely fails to provide the notice required at § 1681k(a)(1) and that failure was intentional and not a mere accident or mistake. Instead, Defendant's actions constitute its standard operating procedures. (*Id*. ¶ 20.)

Mr. Kelly's facts are representative of this systemic failure. B.I.G. furnished his employment-purpose report in December 2013. (*Id*. ¶¶ 9–10.) The report sold by Defendant contained derogatory public-record information erroneously attributed to Plaintiff, including that he had a court case filed against him for an unpaid debt that did not belong to him. (*Id*. ¶ 10.) This public-record information was likely to have an adverse effect on Plaintiff's ability to obtain employment. (*Id*. ¶ 11.) Defendant

did not have procedures in place to obtain the sufficiently complete data necessary for someone to know that the judgment it reported actually belonged to the Plaintiff's similarly named son. (*Id.* ¶ 13.) The public record information Defendant furnished regarding Mr. Kelly was thus "incomplete." (*Id*. ¶ 15.) Nevertheless, despite providing a report for employment purposes, which contained public-record information likely to have an adverse effect upon Plaintiff's ability to obtain employment, Defendant failed to provide timely notice to Plaintiff that it was doing so. (*Id.* ¶ 16.)

Plaintiff's class claim under FCRA section 1681k(a) is thus simple: since Defendant has no strict procedures, it should send the notice. (*Id.* ¶ 38.)

Discovery is yet to take place either on the procedures element or the notice element of the claim. Plaintiff's Complaint, however, contends that the Defendant is a reseller of credit data that it simply copies public records data from Trans Union, a national consumer reporting agency, and merges it into its own reports. (*Id.* at ¶ 13.) Discovery will show that Trans Union has admitted in another case that it has no strict procedures for such data. *Henderson v. Trans Union*, 3:14-cv-00679 (E.D. Va.). Copying inaccurate data from a source with no strict procedures surely does not transform those loose procedures into strict ones. At any rate, Plaintiff claims that Defendant does not follow *any procedures at all* that ensure that the data is complete, up-to-date or accurate. (Dk. 1 ¶¶ 13, 14, 17.)

## IV.    ARGUMENT

**A.    The Complaint Plausibly Alleges A Violation Of 15 U.S.C § 1681k(a).**

> **1.    Because § 1681k(a)(2) does not apply, B.I.G. must send contemporaneous notices.**

Count II of the Complaint alleges that Defendant violated § 1681k(a), which provides as follows:

> (a) In general.  A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items

of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall--

> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 168k(a). Defendant does not challenge that § 1681k(a) applies generally and does not dispute the allegation that it complied with § 1681k(a)(1) and sent a contemporaneous notice. Instead, it argues that the Court should interpret § 1681k(a)(2) to imply an unstated element as to each individual consumer claim. The unstated element is that the consumer must prove that the *individual* report was itself incomplete or not up to date.  But that is not what the actual statutory text provides.

### 2.    "Strict Procedures" and "Completeness" are *ex ante* Elements.

Defendant must necessarily acknowledge that the Complaint pleads that it does not maintain strict procedures designed to ensure that it only furnishes public record information that is complete and up-to-date. The real dispute is whether the Complaint alleges in sufficient detail that Kelly's report itself contained incomplete information. As detailed above, the Complaint does make that allegation.

But even if it did not as to Mr. Kelly, the statutory text at § 1681k(a)(2) does not impose such a case-by-case, report-by-report element or requirement. Plaintiff addresses the substance of "completeness" below. However, an important question for the present Motion is whether §

1681k(a)(2) applies or is satisfied is determined report-by-report, or instead is answered in conjunction with the determination of the "strict procedures" element. "Completeness" modifies the procedures that are required before the § 1681k(a)(2) alternative can apply.

For multiple reasons, it is impossible to conclude that the "strict procedures" element is a case-by-case or individualized determination. This is evident from the face of the actual text of § 1681k(a)(2),[3] which requires that B.I.G. "***maintain*** strict procedures ***designed*** to insure [completeness] whenever" it furnishes such a consumer report. 15 U.S.C. § 1681k(a)(2) (emphasis added). This text requires *ex ante* the maintenance and design of procedures. Unlike FCRA § 1681e(b), which is report-by-report determined ("Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure . . . "), § 1681k(a)(2) considers whether the consumer reporting agency ("CRA") "maintained"[4] procedures that were "designed"[5] to be "strict"[6] enough "to insure that whenever[7] public record information which is likely to have an adverse effect on a consumer's ability to obtain

---

[3] "'In interpreting a statute, the Court looks first to the statute's plain meaning and, if the statutory language is clear and unambiguous, the inquiry comes to an end.'" *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 155 (3d Cir. 2009) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). Where the statutory language is unambiguous, the court should not consider statutory purpose or legislative history. *See AT & T, Inc. v. Fed. Commc'ns Comm'n*, 582 F.3d 490, 498 (3d Cir. 2009).

[4] To "maintain" is "to keep in an existing state." http://www.merriam-webster.com/dictionary/maintain (last viewed October 17, 2016).

[5] To "design" is to create, fashion, execute, or construct according to plan; to conceive and plan out in the mind; to have as a purpose." http://www.merriam-webster.com/dictionary/design (last viewed October 17, 2016).

[6] "Strict" most appropriately means "inflexibly maintained or adhered to." http://www.merriam-webster.com/dictionary/strict (last viewed October 17, 2016).

[7] "Whenever" means "at any or every time that". http://www.merriam-webster.com/dictionary/whenever (last visited October 17, 2016).

employment is reported it is complete and up to date." The procedures B.I.G. maintained and used to furnish a report had to have been "designed to insure" completeness.

Because of this statutory text, the "completeness" question must also be considered as a static, universal, and common question. The statutory sentence containing "complete" does not state that the report needs to be complete. With due respect to any contrary position of some courts it does not make any sense to track statutory text that is unambiguous on this point— "maintain" procedures "designed to insure"—and imposes an implied requirement that a challenged report must itself be incomplete. This is not to say that completeness is irrelevant to a § 1681k(a)(2) claim.  As the Eastern District of Virginia has explained, the incompleteness in the plaintiff-specific report "provides circumstantial evidence bolstering [a consumer's] allegation that [the CRA] maintained a system without sufficient procedures to insure that only 'complete and up to date' criminal information is reported." *Ridenour v. Multi-Color Corp.*, No. 2:15CV41, 2015 WL 7769469, at *3 (E.D. Va. Nov. 30, 2015).[8] In most instances, this is a distinction without a difference because the court is considering only an individual case with narrow evidence regarding what procedures were used as to a specific consumer report and rarely is evidence offered regarding any systemic incompleteness. Contrary decisions are largely based only on individual facts and not class action claims. And no contrary decisions suggesting a report-by-report element of incompleteness decision offers any—**any**—discussion of the actual statutory text. A better reading is as offered by in *Ridenour*—the completeness or incompleteness

---

[8] The same court also rendered a decision in *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 U.S. Dist. LEXIS 119442 (E.D. Va. Sept. 1, 2016).  However, that case was decided largely upon a different basis—standing—and at a different posture—class certification. In the Third Circuit, the law is certainly different, as all class members need not themselves satisfy the standing burden. *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 360 (3d Cir. 2015).

of a specific plaintiff's report is evidence as to whether the procedures a CRA maintained were adequately designed to insure completeness.

Critically, § 1681k(a) cannot be read as determined by whether an individual report turns out at the end incomplete because a CRA would have had to decide *ex ante* and before issuing a report whether it needs to send a § 1681k(a)(1) notice. Section 1681k(a)(2) is part of a larger provision that has to be read in its context. As the court explained *Ridenour*, "a CRA's compliance with § 1681k(a)(2) appears to turn on its procedures in place, not whether a single report happens to contain an error." *Ridenour*, 2015 WL 7769469, at *3 n.5. The alternative interpretation—excusing the CRA from both the notice and the strict procedures requirement so long as the public information in a single respective report is "complete"—would render the § 1681k(a)(1) text meaningless. Instead of reading the statute to have two *ex ante* options—send a contemporaneous notice or maintain strict procedures—the section could be rendered inapplicable because in fact—maybe by dumb luck even—a report's record turned out to be complete.

Accordingly, the Court need not even reach the point Defendant challenges—whether the Complaint's pleading of inaccuracy excludes its further pleading of incompleteness. Defendant does not argue that the Complaint fails to allege that B.I.G. does not maintain strict procedures designed to ensure that it furnishes only complete and up-to-date public records. And as that allegation is itself sufficient to plead a claim that § 1681k(a)(2) does not apply and the CRA must instead send a notice, the Motion should be denied.

### 3. The public record information B.I.G. reported was "incomplete" because it lacked sufficient detail to correctly determine to whom it applied.

Still, even assuming the Court does not agree and instead reads § 1681k(a)(2) as including an implied requirement that Plaintiff's individual report must be incomplete in order to

mandate that B.I.G. send a contemporaneous notice, the facts and allegations establish that the report B.I.G. sold was incomplete.

The Parties and nearly all courts to consider the question agree as to the definition of incompleteness and what it takes for public record information to be "complete" under § 1681k(a)(2):

> In light of the purposes of the FCRA, it seems that the "necessary parts" of a public record must be sufficient to connect a particular public record to a particular consumer. In other words, a record is "complete" if it contains identifying information that is sufficient to link the record to the consumer to whom the record belongs. A "complete" record permits a user to either link the record to the consumer who was the subject of the search query or exclude that consumer as the source of the record. Conversely, then, any record that does not contain sufficient identifying information to verify the identity of the originating consumer is incomplete.

*Henderson*, 2016 WL 1574048, at *12; *see also Poore*, 410 F. Supp. 2d at 572 ("A reasonable juror could conclude that this item was not complete and that this item did not reflect the current public record status of the DUI conviction since the report did not include the actual name, birth date or social security number of the person who was convicted of the crime.").

Contrary to Defendant's characterization, the fact that proof of an inaccuracy is not necessarily sufficient to establish incompleteness is because *incompleteness is a subset of inaccuracy*. But there is no rational or logical way to look at the language or history of this section and not include the category of incompleteness where the CRA omits (or fails to even obtain) a sufficient number of personal identifiers (e.g., first name, middle name, last name, generational category, social security number, date of birth, address) in order to strictly or conclusively link that record to the consumer about whom the record and report are to regard. Nearly every court to consider such a reality has agreed. *Williams v. First Advantage LNS Screening Sols., Inc.*, 1:13CV222-MW/GRJ, 2015 WL 9692872, at *12 (N.D. Fla. Oct. 14,

2015). As the court in *Henderson* held, "[i]t simply is not complete under the FCRA to say that someone named Bill Jones has a conviction record, but whether this is the Bill Jones you are inquiring about, I do not know." *Henderson*, 2016 WL 1574048, at *12. Here, Defendant's report was *inaccurate because* the judgment record furnished was *incomplete*. The terms (accurate versus complete) and mandates (§ 1681e(b) versus § 1681k(a)(2)) are not mutually exclusive. In *Poore*, the Eastern District of Kentucky similarly explained,

> Sterling and USIS also appear to argue that Sterling complied with this provision in that the report they provided to Colgate was, in fact, "complete" and "up to date." . . . The act does not define "complete." Thus, the Court will construe the term in accord with its ordinary or natural meaning. *Chapman v. United States,* 500 U.S. 453, 461–62, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). Webster's Dictionary defines the term "complete," as "having all necessary parts." Webster's Collegiate Dictionary 235 (10th ed.1998). . . . Sterling's consumer report reported a DUI conviction. A reasonable juror could conclude that this item was not complete and that this item did not reflect the current public record status of the DUI conviction since the report did not include the actual name, birth date or social security number of the person who was convicted of the crime.

410 F. Supp. 2d at 572; *see also Adams*, 620 F. Supp. 2d at 334–35 ("Adams does not contend that the criminal conviction records Verifications obtained were themselves inaccurate or outdated. Rather, he argues that Verifications inaccurately attributed to the records to her. . . . [F]or the reasons noted above, a reasonable jury could find that, in inaccurately attributing the Virginia convictions to Adams, Verifications did not "maintain strict procedures designed to insure that . . . [the information it reported was] complete," and therefore violated section 1681k.").

As in these earlier decisions, the Plaintiff's facts herein alleged plausibly offer that the public record information included in his report was not complete as it omitted key pieces of information that would have permitted Defendant to determine that these records did not belong to Plaintiff Kelly. The report Defendant furnished regarding Mr. Kelly omitted necessary

identifying information. As a result of B.I.G.'s failure to maintain strict procedures to check and report the information available, the public record information in Plaintiff's report was incomplete, and created the false impression that the person who suffered the judgment in B.I.G.'s report was the same person as Plaintiff. Thus, Plaintiff has stated a claim under § 1681k(a)(2). *See Poore*, 410 F. Supp. 2d at 572 (stating report was incomplete because "the report did not include the actual name, birth date or social security number of the person who was convicted of the crime"); *Moore*, 2012 WL 4461505, at *2 (denying motion to dismiss § 1681k based on "general allegation that Defendants, as a matter of practice, do not maintain strict procedures to ensure that information pulled from its computers and embedded in its on-demand consumer reports is complete and up to date"); *Adams*, 620 F. Supp. 2d at 334–35 ("[A] reasonable jury could find that, in inaccurately attributing the Virginia convictions to [Plaintiff], [Defendant] did not "maintain strict procedures designed to insure that . . . [the information it reported was] complete' and therefore violated section 1681k"); *Ridenour*, 2015 WL 7769469, at *3 (finding that plaintiff stated a claim where consumer alleged that report was "incomplete and inaccurate" in reporting conviction information); *Legrand v. Intellicorp Records, Inc.*, No. 1:15-cv-2091, ECF 38, at 13 (N.D. Ohio Mar. 24, 2016) (denying motion to dismiss 15 U.S.C. § 1681k(a)(2) claim) (Order attached as Exhibit A). ("[B]y leaving out identifying information included in the public record, which information would allow an employer to determine whether the report, in fact, applied to the applicant at issue, IntelliCorp's reported information was not complete. This is sufficient at this stage of the litigation to state a claim for relief under 15 U.S.C. § 1681k(a)(2).("). The United States District Court for the Southern District of Florida recently considered a near identical motion to dismiss a comparable § 1681k(a) claim. In denying such motion after briefing, the court sided:

> with the plethora of case law support[ing] the position that public record employment reports are incomplete and do not satisfy the strict procedures requirement for purposes of § 1681k(a) if the data included in the records reported is so incomplete that those records cannot be matched to the correct consumer.

*Moody v. Ascenda USA, Inc., et al*, Civ. No. 16-cv-60394, ECF 45, at 6-7 (S.D. Fla. June 24, 2016) (Order attached as Exhibit B). That court concluded that it would "align itself with the majority of the courts to have considered this issue and deny [the defendant's] motion to dismiss the § 1681k(a) claim[.]" *Id*. at 7.

Here, Plaintiff has alleged that the employment report B.I.G furnished to his employer contained public record information that belonged to someone else and was therefore incomplete and not up-to-date. This is sufficient to survive Defendant's Motion.

**B.      Alternatively, The Court Should Allow Leave To Amend.**

Should the Court conclude that the Defendant's arguments have merit, it should grant Plaintiff leave to amend his Complaint. Rule 15 instructs that such leave be "freely given," and the Third Circuit cautions that denial of leave is appropriate only where there are "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004). None of these issues is present here. The case has been stayed for an extended period, and that stay has only recently been lifted. There has therefore been no undue delay in seeking an amendment. Plaintiff has not amended previously, so there are no previously uncured deficiencies. Little discovery has been completed, so there can be no genuine argument from Defendant that it will be prejudiced if Plaintiff amends or that an amendment would be futile. The Court should therefore grant Plaintiff leave to amend if it agrees with Defendant's arguments.

## V.    CONCLUSION

For all of the above reasons, Defendant's motion for judgment on the pleadings should be

denied.

Respectfully Submitted,
**MICHAEL A. KELLY**

By: *John Soumilas*
James. A. Francis
John Soumilas
Lauren K.W. Brennan
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel. (215) 735-8600
Fax (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
lbrennan@consumerlawfirm.com

Kristi Cahoon Kelly, *pro hac vice*
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA  22030
(703) 424-7576 – Telephone
(703) 591-0167 – Facsimile
E-mail:  kkelly@kellyandcrandall.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2016, a true and correct copy of the foregoing was forwarded by

William J. Simmons
**LITTLER MENDELSON, P.C.**
Three Parkway 1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
267.402.3047
wsimmons@littler.com

Chad J. Kaldor
**LITTLER MENDELSON, P.C.**
Fifth Third Center
21 East State Street, 16th Floor
Columbus, OH 43215
614.463.401
ckaldor@littler.com

Rod M. Fliegel
**LITTLER MENDELSON, P.C.**
333 Bush Street, 34th Floor
San Francisco, CA 94104
415.433.1940
rfliegel@littler.com

Daniel P. Shanahan
**WILLIAMS & CONNOLLY, LLP**
725 Twelfth Street, N.W.
Washington, D.C. 20005
202.434.5174
dshanahan@wc.com

*Attorneys for Defendant*
*Business Information Group, Inc.*

_____
*John Soumilas*
Counsel for Plaintiff