IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL KELLY, on behalf of himself       :
and all others similarly situated,        :
          Plaintiff,            :
                               :
          v.                  :        CIVIL ACTION NO. 15-6668
                               :
BUSINESS INFORMATION GROUP,               :
INC.,                                     :
          Defendant            :

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE            December 22, 2016

Before the Court is Defendant's Motion for Partial Judgment on the Pleadings filed by Business Information Group, Inc. ("BIG"). (Doc. 38.) Plaintiff Michael Kelly seeks relief under two provisions of the Fair Credit Reporting Act ("FCRA") with respect to a consumer report sold to his employer about him. BIG's motion seeks the dismissal of Count Two of the complaint, brought under 15 U.S.C. § 1681k, as to which Kelly asserted both an individual claim and a potential class claim. For the reasons set forth below, we find Kelly's complaint legally insufficient to support his individual claim under § 1681k.

I.      **BACKGROUND**

Kelly filed a "Class Complaint" against BIG on December 17, 2015 on behalf of himself and others similarly situated in relation to consumer report background checks furnished by BIG for employment purposes. (Doc. 1.) Kelly alleges he was denied employment opportunities due to adverse public record information in a consumer report that BIG furnished to his employer in December 2013. He characterizes the report as having contained materially false information

1

inasmuch as it stated that a court case had been filed against him for an unpaid debt that did not, in fact, belong to him.   (Compl. ¶¶ 2, 9, 10.)   He was not given notice by BIG that a credit report with this adverse public record item was being produced to his employer.   (*Id.* ¶ 16.)

BIG answered the complaint on April 1, 2016.   (Doc. 13.)   Thereafter the parties consented to magistrate judge jurisdiction.   Following an agreed-upon informal stay of proceedings for several months during the pendency of a case in the United States Supreme Court, we convened a Rule 16 conference and, on September 15, 2016, entered a scheduling order providing for fact discovery to be completed by February 28, 2017, with expert discovery and class certification briefing to follow.   On October 3, 2016, the deadline set by the scheduling order, BIG filed this motion.   It is now fully briefed.   (Docs. 38, 42, 44.)   At the same time, BIG filed a Motion to Strike Class Allegations in the complaint, which is also now fully briefed.   (Doc. 39, 41, 45.)   We will resolve that motion in a separate order following upon the opportunity for the parties to submit further briefing.

## II.    LEGAL STANDARDS

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."   Fed. R. Civ. P. 12(c).   Judgment on the pleadings is appropriate only if the moving party "clearly establishes that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law."   *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008).   A court reviewing a Rule 12(c) motion "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."   *Id.* (citations omitted).

Where the moving party's Rule 12(c) motion presents the court with a legal question based on the theory that the plaintiff failed to state a claim, we review the motion under the same

standards that apply to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146-47 (3d Cir. 2013).   In that posture, we accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them.   We also view the allegations in the light most favorable to the non-moving party, here, the plaintiff.   *DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209, 215 (3d Cir. 2007). As the Supreme Court explained in the context of a Rule 12(b)(6) motion to dismiss, while the complaint "does not need detailed factual allegations," the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."   *Id.*   Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and we are "not bound to accept as true a legal conclusion couched as a factual allegation."   *Papasan v. Allain*, 478 U.S. 265, 286 (1986).   The pleadings must contain sufficient factual matter as to state a facially plausible claim for relief.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   DISCUSSION

Kelly asserts at Count One an individual claim that BIG violated 15 U.S.C. § 1681e(b), the FCRA provision that requires credit reporting agencies ("CRAs") to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" whenever they issue a consumer report.   In Count Two, he asserts a claim, upon which he also intends to seek class certification, that BIG violated 15 U.S.C. § 1681k

when, without providing him notice or employing strict procedures to ensure the completeness and currency of public records that it reported, BIG sold a consumer report to Kelly's employer which resulted in a limitation of his ability to be assigned certain work given the adverse public record information contained in the report.   Kelly alleges that BIG erroneously reported that a judgment had been taken against him when the public record cited by BIG actually did not pertain to him but rather to his son.   While Defendant does not here challenge that Kelly has properly set out a violation of Section 1681e as to the production of a report with allegedly "inaccurate" information, it contends that Kelly has not plausibly pled a violation of Section 1681k because the public record item included in the consumer report to Kelly's employer was not, as a matter of law, incomplete or out of date.

A.      **The requirements of Section 1681k**

Section 1681k concerns matters of public record gathered and included in a consumer report for employment purposes.   It provides in relevant part that:

> (a) A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—
>
> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
>
> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.   For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is

4

reported.

15 U.S.C. § 1681k.

The other provision of the FCRA under which Kelly sues in the count not subject to this motion, § 1681e, addresses compliance with § 1681c, the provision that sets out requirements relating to information contained in consumer reports generally.   Section 1681e provides in relevant part that:

> (b) Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assume maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e.

**B.     The allegations of Plaintiff's complaint**

Inasmuch as Kelly brings claims under both Section 1681e, in Count One, and Section 1681k, in Count Two, his complaint includes averments using terminology found in both sections. As pertinent to the issues presented by BIG's motion for judgment as to Count Two, Kelly asserts:

> 2.     Plaintiff was denied employment opportunities due to inaccuracies in a consumer report from the Defendant, Business Information Group, Inc. ("Defendant").   At least one consume[r] report furnished by Defendant to Mr. Kelly's employer contained materially false and derogatory information.     Accordingly, Plaintiff alleges an individual claim against Defendant for violating § 1681e(b) of the FCRA, which requires CRAs to follow reasonable procedures to assure maximum possible accuracy when furnishing credit reports.
>
> 3.   Additionally, Plaintiff also alleges a class action claim against Defendant pursuant to § 1681k, which is an important requirement intended to provide consumers immediate notice of the furnishing of a consumer report for employment purposes and the details necessary to preemptively contact the reporting agency to obtain and, as appropriate, correct information in the furnished report.
>
> …

9.   On or around December 19, 2013, Defendant procured a consumer report from Trans Union about Plaintiff as part of a routine employment background screening.

10.   In turn, Defendant resold the consumer report to Plaintiff's employer.   The report sold by Defendant contained derogatory and inaccurate public record information erroneously attributed to Plaintiff, including that he had a court case filed against him for an unpaid debts that did not belong to him.

11.   The derogatory and inaccurate public record information that was in Plaintiff's consumer report was likely to have an adverse effect on Plaintiff's ability to obtain employment.

…

13.   Defendant … does not have sufficient procedures to assure the maximum possible accuracy of the credit reports it furnishes regarding consumers.   Instead, Defendant assembles and merges the information from other consumer reporting agencies (such as Trans Union) without following any procedures to assure the accuracy of the underlying data.   If Defendant had any procedure to check the underlying data, or make sure it was complete, it would have discovered that the judgment reported was taken against Plaintiff's son.

14.   Upon information and belief, Defendant does not maintain procedures designed to insure public record information that is likely to have an adverse effect on a consumer's ability to obtain employment is complete and up to date.

15.   Mr. Kelly was informed that he would not be able to sell a particular insurance product due to this derogatory, inaccurate and incomplete item in his consumer report.

16.    Moreover, despite providing a report for employment purposes, which contained public record information likely to have an adverse effect upon Plaintiff's employment, Defendant failed to provide timely notice to Plaintiff that it was doing so.

17.   Upon information and belief, Plaintiff alleges that Defendant did not attempt to follow the option available at 15 U.S.C. §1681k(a)(2), which requires a consumer reporting agency to maintain strict procedures designed to ensure that its public records reporting is complete and up to date.

(Compl. at 1-4.)   He seeks statutory and punitive damages, as well as other relief, under 15 U.S.C. § 1681n for BIG's alleged "willful" violation of § 1681k.   (*Id.*, ¶ 39.)[1]

### C.     Plaintiff's pleading does not plausibly allege a violation of Section 1681k.

Kelly asserts that BIG never sent him timely notice under § 1681k(a)(1) that it was reporting public record information as to him that was likely to have an adverse effect upon his employment.   (Compl. ¶ 16.)   In that BIG did not satisfy § 1681k(a)(1), he contends that BIG was required to satisfy (a)(2), and that it failed to do so.   In response, BIG does not suggest that it satisfied any obligation it had under § 1681k by providing a notice as described in (a)(1).   It nonetheless fundamentally disagrees with Kelly as to what § 1681k(a)(2) means and how it applies here.

As we explain within, we conclude that where, as here, no notice has been provided, Kelly must demonstrate that BIG has failed to maintain procedures to insure completeness and currency *and* that BIG also reported public record information that was either incomplete or not up to date.[2] It is not enough to establish that BIG had deficient procedures.   Further, we conclude that the FCRA requirement to be "complete and up to date" is satisfied by a showing that the public information relied upon is provided in full and is current --- even if, as here, it is claimed to be inaccurate.   Finally, we conclude that the circumstances set out in Kelly's complaint fail to make

---

[1]   In Count One, he also seeks damages, including punitive damages, under 15 U.S.C. § 1681n for the alleged "willful" violation of § 1681e.   (Compl. ¶¶ 25-26.)   Alternatively, he seeks damages under 15 U.S.C. § 1681o for the alleged "negligent" violation of that § 1681e.   (*Id.*)

[2]   Defendant has not raised any question with respect to whether Kelly has suffered harm as a result of the misinformation provided here.   Accordingly, we see no need to discuss what is necessary to establish harm or otherwise show a basis to properly bring a claim under § 1681k.

out a claim under § 1681k, as there is no dispute that the material reported is complete and up to date even if it referred to a different individual.[3]

1. **It is not enough to allege that a CRA did not maintain procedures designed to insure completeness and currency; the CRA must have reported public record information that was either incomplete or not up to date.**

Kelly's complaint alleges that BIG did not satisfy § 1681k(a)(2) in that it does not "maintain strict procedures designed to insure" that public record information that is likely to have an adverse effect on a consumer's ability to obtain employment when reported "is complete and up to date." (Compl. ¶ 17.)  Plaintiff urges us to read § 1681k(a)(2) as imposing upon BIG the obligation to "maintain" strict procedures "designed to insure" completeness and currency as to the public records it reports and that nothing more is required in order for him to establish a private cause of action against BIG for a report produced as to him.   He points to his averments that BIG does not maintain procedures designed to insure the completeness and currency of the public records it reported.  *See, e.g.,* Compl. ¶ 14.  He contends that this is enough: "The procedures [BIG] maintained and used to furnish a report had to have been 'designed to insure' completeness."  (Doc. 42-1 at 8.)  He contends that this "'completeness' question" is a "static, universal, and common question," and that because "[t]he statutory sentence containing 'complete' does not state that the report needs to be complete," the statute does not require "that a challenged report must itself be incomplete."   (*Id.*)

Kelly's approach offers a certain appeal, particularly given the remedial purpose of the FCRA.   Under his reading, the CRA chooses between two clear options to comply with Section

---

[3]  We note that Kelly's claim under § 1681e(b) is not affected by BIG's motion or this decision and remains a presumably viable remedy for the harm Kelly alleges he suffered.

1681k when producing for employment purposes a credit report containing adverse public record information: (1) send a notice to the consumer advising her of the disclosure; or, failing that, (2) put in place "strict procedures" designed to ensure the completeness and currency of the public records reported.  We cannot accept the corollary notion advanced by Kelly, however, that § 1681k authorizes a consumer to bring a cause of action regarding public record information produced for employment purposes where she was not subject to a report that was defective *in the manner addressed by § 1681k*.  *See* Pl. Br. at 3, 6-9.  Rather, we agree with BIG that the text of § 1681k creates a requirement that a consumer's individual report must have been "not 'complete and up to date'" in order for the consumer to sue under this provision of the FCRA.

We find support for this approach in cases cited by BIG, including *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688 (N.D. Ga. 2012).  In considering the plaintiff's motion for class certification, the *Farmer* court undertook an analysis of § 1681k(a)(2), seeking to determine "what 'requirement' § 1681k(a)(2) imposes on a CRA."  *Farmer*, 285 F.R.D. at 695.[4]  The court began with a textual analysis.  In subsection (a)(2) of § 1681k, Congress spoke not just of a CRA establishing "procedures" in the abstract.  Rather, it continued with text that explains the purpose behind the procedures, that they must be "designed to insure" a particular result, which was that the public record information furnished be complete and up to date.  The court reasoned that the second sentence of § 1681k(a)(2) lent support to the interpretation that completeness and currency of the particular report produced "is crucial for purposes of determining liability under that section."  *Farmer*, 285 F.R.D. at 696.  That sentence provides that particular "items of public

---

[4]  This decision in *Farmer* was issued in response to the plaintiff's motion for class certification. Although the procedural posture of *Farmer* was not the same as what we have here with Defendant BIG's 12(c) motion, the interpretive analysis as to § 1681k is no different.

record" "shall be considered up to date" in relation to "the current public record status of the item at the time" that the public record is reported.   15 U.S.C. § 1681k(a)(2).   The fact that Congress established a precise standard for showing when information is "considered up to date" for purposes of § 1681k(a)(2) strongly supports the notion that compliance with § 1681k(a)(2) requires that the CRA produce reports that are, in fact, up to date.   As the *Farmer* court reasoned:

> If the statute simply required the maintenance of strict procedures and did not also require the information in each report to be up to date, this second sentence would be largely irrelevant, because whether a particular report was up to date would not be dispositive of whether a CRA had adopted strict procedures.   Indeed, there would be no need to ascertain "for purposes of" § 1681k(a)(2) whether a record was up to date.

*Farmer*, 285 F.R.D. at 696 (internal citations omitted).   The court noted that to interpret § 1681k(a)(2) as requiring only the maintenance of procedures "would render over 50% of § 1681k(a)(2) meaningless," which would be an untenable proposition.   *See, e.g., United States v. DBB, Inc.*, 180 F.3d 1277, 1285 (11th Cir. 1999) ("A statute should be interpreted so that no words shall be discarded as meaningless, redundant, or mere surplusage.").

We also find persuasive the *Farmer* court's observation that its interpretation — that § 1681k is concerned with the completeness and currency of the reports — was supported by three other sources.   First, the FTC, which is responsible for enforcing many of the FCRA's provisions, issued a staff opinion letter in 1999 reflecting the Commissioner's assertion that § 1681k(a)(2) "require[s] … that each *item* [of public record information] reported [by the CRA] be complete and up to date," and that a CRA "complies with [§ 1681k(a)(2)] if its report is 'complete and up to date' in the sense that it includes the current public record status [of] each individual item reported." Federal Trade Commission Staff Opinion Letter, 1999 WL 33932137, at *1 (Dec. 16, 1999) (emphasis original), *cited in Farmer*, 285 F.R.D. at 697.   This indicates that the content of the

10

report is significant.   Second, the consensus of the other courts to address this issue have interpreted § 1681k(a)(2) as imposing a requirement that the information in a particular consumer report be complete and up to date.   *Farmer*, 285 F.R.D. at 697.   Third, this interpretation of § 1681k is consonant with the interpretations given by the circuit courts as to similar provisions of the FCRA — § 1681e(a) and § 1681e(b) — both of which require a CRA to adopt certain kinds of procedures that must be designed to avoid or ensure a particular result.   As the *Farmer* court observed:

> Courts have uniformly read § 1681e(b) as requiring a CRA to both maintain reasonable procedures and disclose an accurate report.[FN and citation omitted] To sustain a claim under § 1681e(b), a consumer must show that an inaccurate report was furnished by a CRA.   Thus, courts have concluded that § 1681e(b) does not require merely the adoption of reasonable procedures, but instead imposes an accuracy requirement.   The "reasonable procedures" language is read "as a limit on liability that might otherwise attach for inaccurate reports, rather than as an affirmative basis for a claim."   *Washington v. CSC Credit Servs.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000).

*Farmer*, 285 F.R.D. at 698.   Citing to *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151 (11th Cir. 1991) and *Washington v. CSC Credit Servs.*, 199 F.3d 263 (5th Cir. 2000), in particular, the *Farmer* court recognized the case law interpreting § 1681e(a) and § 1681e(b) as to compel the conclusion that § 1681k(a)(2) does not simply require the adoption of a certain kind of procedure. *Farmer*, 285 F.R.D. at 699.   The *Washington* court determined that the function of the "procedures" as set forth in § 1681e(b) was not to protect merely against the "risk of improper disclosure that arises" when procedures are not followed but rather to ensure that the information contained in each consumer report furnished is, in the case of § 1681e(b), "accurate," or in § 1681k(a)(2), "complete and up to date" — "[a] purpose [that] is not furthered unless a plaintiff suffers the harm the procedures are meant to prevent."   *Farmer*, 285 F.R.D. at 700 (quoting

*Washington*, 199 F.3d at 267).   For those three reasons, the *Farmer* court concluded that a plaintiff seeking to establish a violation of § 1681k(a)(2) must show that: (1) a CRA furnished a consumer report for employment purposes compiled from public records containing adverse information; (2) the CRA failed to maintain strict procedures designed to insure that the information in the report was complete and up to date; *and* (3) the consumer report was either incomplete or not up to date.   *Id.* at 700.

We recognize Plaintiff's argument that the better reading of the statutory text is that completeness in a report is not required but that measures designed to ensure completeness are. In terms of authority, he points to *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452 (E.D. Va. 2015), in which the district court commented in a footnote that "a CRA's compliance with § 1681k(a)(2) appears to turn on its procedures in place, not whether a single report happens to contain an error," and suggested that the fact that a report was produced with conflicting information concerning the public record constituted some evidence that the CRA's system employed insufficient procedures.   *Ridenour*, 147 F. Supp.3d at 458 n.5.   We do not, however, find that case persuasive, as it reflected little discussion of this issue.   Rather, as was noted just three months ago by another court within the Eastern District of Virginia, "several courts," in addition to the *Farmer* case described above, "have required a plaintiff claiming a § 1681k violation to allege sufficient facts to support an inference that the subject reports were incomplete or not up to date to satisfy the plausibility pleading requirements of Fed. R. Civ. P. 12(b)(6)." *Henderson v. CoreLogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 4611570, *4 (E.D. Va. Sept. 2, 2016).   We will join that number.   With this conclusion established, we turn to an evaluation of what renders a report incomplete and the adequacy of the complaint's pleading of a violation of § 1681k(a)(2).

### 2.     A public record reported in a credit report is "complete and up to date" when the current record is reported.

BIG's principal argument in its motion is that Plaintiff incorrectly substitutes an "accuracy" requirement for the "complete and up to date" requirement of § 1681k(a)(2).   It argues that "accuracy" is within the purview of § 1681e and that for purposes of § 1681k(a)(2), "[a] report is only not 'complete' when it fails to include the disposition of a case that is included in the public record," and that it "is only not 'up to date' when it does not include the most recent disposition." (Doc. 38 at 4.)   Kelly responds that he satisfies this provision because he alleged that BIG reported a public record that was attributed to him but actually pertained to his son.   *See* Doc. 42-1 at 13 ("Here, Plaintiff has alleged that the employment report [BIG] furnished to his employer contained public record information that belonged to someone else and was therefore incomplete and not up-to-date.   This is sufficient to survive Defendant's Motion.").   Alternatively, he argues that the report that BIG sold as to him was "incomplete" because BIG was required to include sufficient personal identifiers to link the public record to him.   *See* Doc. 42-1 at 9-10.   He contends that "there is no rational or logical way to look at the language or history of this section and not include the category of incompleteness where the CRA omits (or fails to even obtain) a sufficient number of personal identifiers … in order to strictly or conclusively link that record to the consumer about whom the record and report are to regard."   (*Id.* at 10.)

This second theory articulated by Kelly has been accepted in one other court.   In *Henderson v. CoreLogic National Background Data, LLC*, 161 F. Supp.3d 389 (E.D. Va. 2016), the defendant moved for summary judgment on the § 1681k claim of consumers as to whom criminal convictions were reported that were incorrectly attributed to them, leading to a loss of employment opportunities.   The court began with an analysis of whether the information

provided was complete and up to date, noting the defendant's contention that there was no factual dispute that the results reported as to the plaintiffs "reflected the existing public record status of the listed convictions and charges at the time of reporting."   *Id.* at 402.   The court observed neither it nor the parties had found any decision determining whether a consumer report can be "complete" when it includes adverse public record items that pertain to someone other than the consumer who was the subject of the inquiry.   *Id.*   Bearing in mind the FCRA's statutory purpose to protect consumers and establish credit reporting practices that utilize accurate, relevant, and current information in a responsible manner, *id.* at 403, citing *Guimond v. Trans Union Credit Info Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995), the *Henderson* court continued:

> In light of the purposes of the FCRA, it *seems* that the "necessary parts" of a public record must be sufficient to connect a particular public record to a particular consumer.   In other words, to be "complete" under the FCRA, a record must contain sufficient information to link the record with the subject of the query, here, Henderson or Hines.

*Henderson*, 161 F. Supp.3d at 403 (emphasis in original).   The court noted evidence suggesting the defendant's practice was to purchase the data it reported in "bulk," in a format that conveyed only some of the data included in the underlying public records.   While the defendant took the position that it could not make further efforts to "link" the subject consumer to the public record it reported because it purchases its data in bulk in this manner, the court found that any such inability would not exempt it from the "completeness" requirement of § 1681k(a)(2) where it had not opted to instead provide the notices addressed in § 1681k(a)(1):

> It simply is not complete under the FCRA to say that "someone named Bill Jones has a conviction record, but whether this is the Bill Jones you are inquiring about, I do not know."   Yet, that is precisely what [defendant] acknowledges to be the result that it provides.

*Id.* at 403-04.

Plaintiff argues that his § 1681k claim should go forward for the same reason:

> As in these earlier decisions, the Plaintiff's facts herein alleged plausibly offer that the public record information included in his report was not complete as it omitted key pieces of information that would have permitted Defendant to determine that these records did not belong to Plaintiff Kelly.   The report Defendant furnished regarding Mr. Kelly omitted necessary identifying information.

Doc. 42-1 at 11-12.   BIG responds that the complaint, in fact, failed to actually allege "any specific missing information," such that Kelly's argument that the report sold by BIG should have contained additional identifying detail is of no moment and does not save the complaint.   *See* Doc. 44 at 7 ("Plaintiff's Complaint remains deficient because he fails to plead which specific identifiers in the judgment would have indicated it was not his and that Defendant omitted from its report.").   We agree.   As much as Kelly's brief in opposition to the 12(c) motion suggests that other information may have been available to properly identify the subject of the public record reported by BIG, his brief does not purport to identify what data or detail was available in the public record at the time the consumer report was produced that would have enabled BIG to determine whether or not the subject of the public record was "the" Michael Kelly about whom the consumer report was requested.   And, what is more pertinent is that *the complaint* contains no such averment.   Thus, we agree with BIG that Kelly has not plausibly pleaded a § 1681k violation with regard to missing "personal identifiers" and that he is therefore required to prove that a report containing a "not me" record is "incomplete" as a matter of law.

Having fully considered both parties' proposed interpretations, we agree with BIG that a public record reported in a credit report is "complete and up to date" when the current record is reported.   We find support for this interpretation in the cases relief upon by BIG, particularly

*Jones v. Sterling Info Systems, Inc.*, No. 14-cv-3076, slip op. (S.D.N.Y. Mar. 30, 2016) and *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688, 697 (N.D. Ga. 2012), which Kelly chose not to address in his opposition brief.

In *Jones*, the plaintiff lost a job when the defendant CRA reported that he had a number of criminal convictions when he had none.   The CRA reported information on another person who had the same first and last name and date of birth as the plaintiff and did not match other available identifying information from the public records with information it had on the subject of the request.   *Jones*, slip op. at 1-2.   The plaintiff similarly advanced the argument that, in order to satisfy the requirement that the public record information it reported was "complete," the CRA had to produce all personal identifying information from the underlying publicly available courthouse record.   The defendant argued that reading Section 1681k in the context of the FCRA as a whole, the obligation to provide a record that is "complete and up to date" meant that the CRA must provide the "current status of the public record."   *Jones*, slip op. at 4.   The court agreed with the defendant that it must look at the entire statutory scheme in order to determine the meaning of "complete and up to date."   It noted that the plaintiff's proposed interpretation would be sensible if the purpose of § 1681k(a)(2) were to prevent criminal records from being attributed to the wrong person, which was what had occurred as to Mr. Jones, as a requirement to report all identifying information in the public record might minimize the problem that arises when different persons have the same name (and, in this case, the same birthdate).   The court continued:

> The problem with Plaintiff's argument is that there is an entirely different section of the statute (under which Plaintiff is pursuing an individual claim) that is designed exactly for that purpose.   Section 1681e(b) requires CRAs to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of reports that are published.   Having already mandated reasonable procedures to ensure accuracy, it does not make sense that Congress would have

imbued in the word "complete" the obligation Plaintiff advocates.
*See Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688, 697 (N.D. Ga.
2012).

*Jones*, slip op. at 5.   The court cautioned against conflating the CRA's obligation under § 1681e(b) to have procedures to ensure "accurate" records with its obligation under § 1681k(a) to have procedures to ensure "complete and up to date" records.   *Jones*, slip op. at 6.

We find persuasive this approach of the *Jones* court, as it is supported by the text of 1681k(a) specifically and the context of the FCRA as a whole, the legislative history of this provision, and an explanation offered by the Federal Trade Commission as to the meaning of this provision.   With respect to a textual analysis of Section 1681k(a)(2), as to the meaning of "complete," Congress included within section 1681k(a)(2) a definition for the term "up to date" but neither that section nor the FCRA elsewhere defines the term "complete."   Applying the canon of construction of *noscitur a sociis*,[5] the *Jones* court assessed the meaning of "complete" by considering the content of the neighboring words with which it is associated, both as part of the phrase "complete and up to date," as well as in the second sentence of that subsection: "For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, … and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported." 15 U.S.C. § 1681k(a)(2).   The *Jones* court determined that the plain language of § 1681k(a)(2) supports an interpretation of "complete" "in the context of the currency of the reported public records," as Congress enumerated the types of public record

---

[5]   This canon of statutory construction provides that when a word is capable of many meanings, it "is given more precise content by the neighboring words with which it is associated."   *United States v. Williams*, 553 U.S. 285, 294 (2008).

items with which it was concerned and highlighted its concern in § 1681k(a)(2) about "the current public record status of the item at the time of the report."   *Jones*, slip op. at 6-7.

This interpretation is also suggested by a consideration of the language of § 1681k in the context of the FCRA as a whole.   We are mindful of the guidance of the Supreme Court that where a separate statutory provision by its plain terms is "more obviously tailored to the concern at issue," there is less of a rationale for "stretching the language of the [statutory provision] to accommodate [an] expansive reading[.]"   *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 588 (2010).   While we appreciate that § 1681k applies particularly to the context of credit checks for employment, which is the context in which this dispute arises, we can find no basis to stretch the meaning of "complete and up to date" public records to encompass "accurate" records.   We find it particularly significant that another section of the FCRA, Section 1681e(b), addresses Kelly's concern of an incorrectly attributed public record, as that section requires CRAs to employ "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).   We thus agree with the *Jones* court that it "makes sense to read section 1681k(a)(2) to address a different concern – namely, the obligation of the CRA to report current (as opposed to outdated) records."   *Jones*, slip op. at 7.

The understanding that the phrase "complete and up to date" addresses the more narrow issue of the current public record status of the items being reported is also supported by legislative history, described above.   Both the *Jones* court and the *Farmer* court looked to the 1969 report of the Senate Committee on Banking and Currency that accompanied an early version of the bill.   As the *Jones* court noted, the committee report identified the problem Congress was trying to address as the systematic compilation of public record information that is not updated before it is reported,

such that a credit bureau might publish a record of a suit or arrest without also indicating that the suit was dismissed or charges dropped, putting in jeopardy the consumer's future employment "because of *an incomplete credit report*."   S. Rep. No. 91-517, 91st Cong., 1st Sess., at 4 (Nov. 5, 1969), *cited in Jones*, slip op. at 8.   Legislative history from the bill's final enactment in the House also makes clear that Congress's concern in this section was the currency of the public record. *Jones*, slip op. at 8-9 (citing 116 Cong. Rec. H 10048, 10052 (daily ed. Oct. 13, 1970) (statement of Rep. Sullivan)).

Finally, as both the *Jones* and *Farmer* courts observed, FTC guidance also lends support to the view that "complete and up to date" refers to the current status of public record items.   The FTC Division of Financial Practices staff opinion letter interpreted 1681k(a)(2) to "require only that each [public record] *item* reported be complete and up to date," and offered examples: that a report of an indictment must also report any dismissal or acquittal available on the public record as of the date of the report, and that a report of a conviction must similarly report a reversal that has followed from an appeal.   *See* FTC, Div. of Fin. Practices, Staff Opinion Letter, 1999 WL 33932137 (Dec. 16, 1999) (emphasis in original).   *See Farmer*, 285 F.R.D. at 696-97 (citing this as persuasive authority in the interpretation of section 1681k(a)); *Jones*, slip op. at 9 (noting same). These three sources --- text of the particular provision and the statute as a whole, legislative history, and agency interpretation --- compel us to agree with the *Jones* court: "Because section 1681k(a)(2) only requires a CRA to report the current public record status of an item," *Jones*, slip op. at 9, Kelly's interpretation that renders the public records reported "incomplete" when they erroneously report information on another consumer or lack hypothetical personal identifiers from the public record is not persuasive.

### 3.      Plaintiff has not plausibly alleged that the consumer report produced as to him was not "complete and up to date".

As described above, Kelly's complaint alleges that a consumer report furnished by BIG as to Plaintiff "contained materially false and derogatory information," (Compl. ¶ 2), including "derogatory and inaccurate public record information erroneously attributed to Plaintiff, including that he had a court case filed against him for an [sic] unpaid debts that did not belong to him," (*id.* ¶ 10); and that his employment opportunities were limited "due to this *derogatory, inaccurate and incomplete item* in his consumer report." (*Id.* ¶ 15 (emphasis added).)   He contends that if Defendant had "any procedure to check the underlying data, or make sure it was complete, it would have discovered that the judgment reported was taken against Plaintiff's son," not against Kelly.   (*Id.* ¶ 13.)   He pleads, "upon information and belief," that BIG does not maintain (any) procedures designed to insure that adverse public record information it shares is "complete and up to date."   (*Id.* ¶ 14.)

Paragraph 15 of the complaint *does* allege that the public record "item" in Kelly's consumer report that caused him to lose a sales opportunity with his employer was "incomplete." (Compl. ¶ 15.)   But the clear defect or deficiency in the consumer report about which he complains is that it was inaccurate as to him in that it reported "that he had a court case filed against him for an unpaid debts [sic] that did not belong to him."   (Compl. ¶ 6.).   As Plaintiff's own allegations demonstrate, *see* Compl. ¶¶ 2, 12, 13, this harm relates to § 1681e(b), which requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."   Although Plaintiff embeds the terms "complete," "incomplete," and "complete and up to date" in some of his averments, he does not allege that a public record item reported as to him which brought about the harm he

suffered reflected something other than the current status of that court case. His allegations do not establish that BIG provided a consumer report containing an item of public record that was incomplete or not up to date. He has not pled a plausible violation of § 1681k. Kelly's individual claim in Count II of the complaint must be dismissed.

## IV.   CONCLUSION

We do not lightly dismiss a claim where a consumer's employment prospects were limited by Defendant's communication of erroneous negative information bearing upon his credit.   While § 1681k(a) seeks to address injuries in that setting, however, it does not provide a cause of action for all errors in that context.   Rather, § 1681k(a) reflects Congress's concern that public record information was being gathered, allowed to go stale, and then reported in that "incomplete and out of date" state.   We cannot interpret § 1681k(a) independent of its plain meaning, particularly where another provision is capable of providing a remedy for the similar harm that may be caused by the reporting of inaccurate information.   We thus reject Plaintiff's proposed interpretation of § 1681k(a)(2), as we have determined that this section requires that the consumer have been the subject of a report that was not "complete and up to date" and that "completeness" refers not to accuracy nor to inclusion of identifying information as to the consumer but rather the current public record status of the item that is attributed to the consumer.   For the foregoing reasons, Defendant's motion for partial judgment on the pleadings (Doc. 38) will be granted and Count II of the complaint will be dismissed as to Kelly.

An appropriate order will follow.