IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL KELLY, on behalf of himself    :
and all others similarly situated,    :
          Plaintiff,    :
    :
       v.    :      CIVIL ACTION NO. 15-6668
    :
BUSINESS INFORMATION GROUP,    :
INC.,    :
          Defendant    :

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE          June 22, 2017

Plaintiff Michael Kelly[1] has filed an Amended Complaint seeking relief under two provisions of the Fair Credit Reporting Act ("FCRA") with respect to a consumer report that Defendant Business Information Group, Inc. ("BIG") sold to his employer concerning his credit history.  Before the Court is Defendant's Motion to Dismiss Amended Complaint (Doc. 60), which seeks the dismissal of Count Two of the amended complaint.  For the reasons set forth below, we find that Count Two of Kelly's complaint is legally sufficient to support his claim under 15 U.S.C. § 1681k.  We will deny the motion.

I.    **BACKGROUND**

Kelly filed a "Class Complaint" against BIG on December 17, 2015 on behalf of himself and others similarly situated in relation to consumer report background checks furnished by BIG

---

[1] We understand the plaintiff in this action to be Michael Anthony Kelly.  *Compare* Class Compl. (identifying plaintiff as "Michael Kelly") *with* Amended Class Compl. (referring to plaintiff in caption and text as "Michael A. Kelly").  *See also* Doc. 60 at Ex. B (state court filings dated July 10, 2013).

for employment purposes.  (Doc. 1.)  Defendant answered the complaint on April 1, 2016.  (Doc. 13.)  After the Court entered a scheduling order, Defendant moved for judgment on the pleadings as to Count Two of the complaint.  The Court granted the motion on December 22, 2016 (Doc. 51), and on January 17, 2017, Kelly filed an Amended Class Complaint.   (Doc. 58.)

Kelly alleges he was denied employment opportunities due to adverse public record information contained in a consumer report that BIG furnished to his employer in December 2013.  (Am. Compl. ¶ 39.)  He does not append the report to his Amended Complaint, although he provides what purports to be a reproduction of "[t]he entire information [Defendant] elected to obtain [from TransUnion Databases] (and then furnish as its own report)[.]"  (*Id.* ¶ 23.)  He alleges that this report attributed to him a court case for an unpaid debt that did not, in fact, belong to him.  (*Id.* ¶¶ 2, 9-10, 12.)  BIG did not provide him notice that it was producing to his employer a credit report with this adverse public record item.   (*Id.* ¶ 20.)

Kelly asserts at Count One of the Amended Complaint an individual claim that BIG violated 15 U.S.C. § 1681e(b), the FCRA provision that requires credit reporting agencies ("CRAs") to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" whenever they issue a consumer report.  In Count Two of the Amended Complaint, he asserts a claim, upon which he also intends to seek class certification, that BIG violated 15 U.S.C. § 1681k when, without providing him notice that it was sharing adverse public record information with his employer, and without utilizing strict procedures to ensure the completeness and currency of public records that it reported, BIG sold a consumer report that resulted in a denial of employment opportunities.

On February 24, 2017, BIG filed its motion to dismiss Count Two, the claim under § 1681k with potential class scope.   The motion is now fully briefed.   (Docs. 60, 67, 70.)   In this context,

BIG also asked the Court to take judicial notice of several of the exhibits appended to its motion, consisting of a portion of its actual report to Sun Life and of documents and docket entry information from the New Jersey court file for the case that BIG identified as to Plaintiff.   (Doc. 62.)  BIG also filed a contemporaneous Motion to Strike Class Allegations in the amended complaint, which also relates to the § 1681k claim asserted in Count Two.   That motion is also now fully briefed (Docs. 61, 66, 71), although it will not be addressed in this Memorandum.

## II.   LEGAL STANDARDS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A complaint will satisfy this threshold test for facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At this motion to dismiss stage, the Court relies upon the facts alleged in the amended complaint and any appended documents.   We do not consider additional facts asserted in an opposition to the motion to dismiss, as a brief is a not a pleading under Fed. R. Civ. Proc. 7(a) and a plaintiff may not amend his pleading through his brief.   *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (noting this axiom and observing that legal theories in plaintiff's opposition brief may be considered "only to the extent that they find support in the allegations set forth in the complaint").   Where a document has not been appended to the complaint but is incorporated by reference in the complaint and is "integral to or explicitly relied upon in the complaint," we may consider the document without converting the motion to dismiss to a summary judgment motion.   *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426

(3d Cir. 1997).   *See also Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3rd Cir.1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"); *Sims v. Viacom, Inc.*, No. Civ. A. 09-3521, 2009 WL 3856667, at *1 (E.D. Pa. Nov. 17, 2009) ("We also may consider undisputed documents alleged or referenced in the complaint.").   In addition, we may take judicial notice of and consider public records of other judicial proceedings without converting the motion to dismiss to a summary judgment motion. *See In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005) (noting that it was taking judicial notice of relevant state court proceedings).   *But see Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F3d. 410, 426-27 (3d Cir. 1999) (permitting court to take judicial notice of the existence of another court's opinion, although not for the truth of the facts recited in an opinion).

## III.   DISCUSSION

BIG contends that Kelly has not plausibly pled a violation of Section 1681k in Count Two because the public record item included in the consumer report it sold to Kelly's employer was not, as a matter of law, incomplete or out of date.   As we consider this question, we first analyze the text of Section 1681k and review the pertinent averments of the Amended Complaint.   We also discuss how we take into account in the Rule 12(b)(6) analysis the additional documents that BIG has put before us in relation to Plaintiff's allegations.   We then assess whether Plaintiff has plausibly alleged that BIG's December 19, 2013 report to Sun Life included public record information that, *inter alia*, was not "complete and up to date" when reported.

### A.   The requirements of Section 1681k

Section 1681k concerns matters of public record gathered and included in a consumer

report for employment purposes.   It provides in relevant part that:

> (a) A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—
>
> > (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
>
> > (2) **maintain strict procedures designed to insure** that whenever **public record information** which is **likely to have an adverse effect** on a consumer's ability to obtain employment is reported[,] it **is complete and up to date**.   For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k (emphasis added).

Our Memorandum Opinion of December 22, 2016 also considered the pleading requirements for a § 1681k violation.   We determined that where no notice had been provided by the CRA as contemplated by § 1681k(a)(1), the consumer must plead that the CRA failed to satisfy § 1681k(a)(2) by maintaining procedures to insure completeness and currency of its reports and that the CRA, in fact, reported public record information that was either incomplete or not up to date.   We noted in our analysis that the statutory obligation that the public record information produced by the CRA be "complete and up to date" could be satisfied by a showing that the public information relied upon was provided in full and was current --- even if, as originally pled in Kelly's case, the credit report was inaccurate in that it mistakenly related to a judgment allegedly taken against someone else.   *Kelly*, No. 15-6668, slip op. at 15-19 (E.D. Pa. Dec. 22, 2016).

5

As part of our analysis of the Rule 12(c) motion before the court concerning the original complaint, we also explored at some length what problem § 1681k sought to address and what it means for public record information reported by a CRA to be "complete and up to date." We relied upon *Jones v. Sterling Info Systems, Inc.*, No. 14-cv-3076 (S.D.N.Y. Mar. 30, 2016), in concluding that a public record item reported by a CRA to an employer is "complete and up to date" when the current record is reported. *See Jones*, slip op. at 6-7. Considering the function of Section 1681k in light of that of Section 1681e(b), which addressed *accuracy* in records, we agreed with the *Jones* court that it "makes sense to read section 1681k(a)(2) to address a different concern – namely, the obligation of the CRA to report current (as opposed to outdated) records." *Jones*, slip op. at 7.

We also agreed with the *Jones* court regarding its interpretation of the § 1681k phrase "complete and up to date," with regard to the standards by which a CRA is held regarding the public records it produces. We agreed that the term "complete" should be interpreted in the context of the currency of the reported public record. We agreed that § 1681k does not encompass claims that a public record of another individual was misattributed to the subject individual, as that is the purview of § 1681e(b)'s accuracy language. Rather, we committed to reading § 1681k(a)(2) as addressing a different concern: "namely, the obligation of the CRA to report current (as opposed to outdated) records." *Kelly*, slip op. at 18 (quoting *Jones,* slip op. at 7). We thus understood the phrase "complete and up to date" to address the more narrow issue of the current public record status of the items being reported. *Id.* We also recognized legislative history noted by other courts, reflecting that the problem Congress was trying to address was the systematic compilation of public record information that is not updated before it is reported. *Id.* at 18-19.

**B.     The allegations of Plaintiff's amended complaint**

As pertinent to the issues presented by BIG's motion to dismiss Count Two, Kelly asserts that BIG procured a consumer report concerning him from TransUnion on or around December 19, 2013.  (Am. Compl. ¶ 9.)   BIG re-sold the consumer report to Kelly's employer as part of an employment background screening.   (*Id.* ¶ 10.)   BIG did not provide timely notice to Kelly that it was producing for employment purposes a report that contained public record information likely to have an adverse effect upon his employment.  (*Id.*  ¶ 20.)   The report BIG ultimately provided Kelly's employer "contained derogatory and inaccurate public record information erroneously attributed to Plaintiff, including that he had a court case filed against him for an unpaid debts [sic] that did not belong to him."   (*Id.* ¶ 12.)

Plaintiff alleges that BIG assembles and merges information it purchases from consumer reporting agencies such as TransUnion without following any procedures to ensure either "the accuracy of the underlying data" or that it furnished "the correct and truthful status of its public records."   (*Id.* ¶¶ 15-16.)   The report BIG provided to Kelly's employer "did not contain the current status of the court record and in fact did not even contain the date of the supposed judgment," reporting only the date the judgment was added to his credit file.  (*Id.* ¶ 24.)   The judgment that BIG included in its report concerning Kelly "was actually showing in the New Jersey court records as paid and not owing."   (*Id.* ¶ 16.)[2]   The actual courthouse record contained a letter dated June 10, 2013 from the creditor Daniel Bento and addressed "To Whom It May

---

[2]   The public record information that BIG obtained from TransUnion showed a "civil judgment" in "circuit court," with a specified docket number, and that was added to the credit file on 02/2013. "Liabilities" was listed as $750.00.   Fields for "date paid" and "amount owed" were blank.   (Am. Comp. ¶ 23.)

Concern."   Mr. Bento's letter represented that he mistakenly identified the defendant debtor in the small claims action he filed as "Michael A. Kelly" when it should have been "Michael R. Kelly," the son of Michael A. Kelly.   The letter further noted that his suit was for unpaid rent "which has now been satisfied in full."   Mr. Bento asked that "the initial document" be withdrawn, again reiterating in closing that he would like someone to "please correct as soon as possible as this claim has been completely satisfied.   Involuntary dismissal."   (*Id.* ¶¶ 25-26.)   Plaintiff alleges that "the actual final amended judgment," *i.e.*, the "actual judgment record at the New Jersey courthouse," "ultimately included" this correspondence from Mr. Bento to the state court, which explained "that the judgment was against Michael 'R' Kelly and not Michael 'A' Kelly."   (*Id.* ¶ 31.)

Kelly alleges that if BIG had in place a procedure to check the underlying data it obtained from TransUnion, or make sure it was complete, "it would have discovered that the judgment reported was taken against Plaintiff's son," not Plaintiff, as it reported.   (*Id.* ¶ 15.)   He also complains that BIG purchased "minimal information" and that the record it included in its report regarding Plaintiff "omitted full identifying information contained in that actual judgment record at the New Jersey courthouse, including something so obvious as the middle initial (or name) of the person actually associated with the public record."   (*Id.* ¶ 31.)

### C.   Other items considered in review of motion under Fed. R. Civ. P. 12(b)(6)

BIG has formally requested that we take judicial notice of court records it attached as its exhibits to its motion to dismiss.   *See* Doc. 62.[3]   These documents consist of:

---

[3]   BIG has provided the version of the documents produced by Plaintiff in discovery, which would seem to obviate any objection as to the authenticity of the documents.

- the documents filed in Monmouth County, New Jersey Small Claims Court Case No. 00298912, the case as to which a $750.00 judgment was reported by BIG concerning Plaintiff (Doc. 60, Ex. B);

- a printout of publicly-available screens from the New Jersey Judiciary's electronic *civil docket* for case no. 00298912 (Doc. 60, Ex. C); and

- a printout of publicly-available screens from the New Jersey Judiciary's electronic *judgment docket* for case no. 00298912 (Doc. 60, Ex. D).

We will grant BIG's request and take judicial notice of these public records from the New Jersey Judiciary website and the Monmouth County Small Claims Court case file for No. 00298912 in Exhibits B through D to its motion to dismiss.  We also find it appropriate to consider the excerpt from the credit report provisionally filed under seal as Exhibit A to BIG's motion, inasmuch as this document is integral to the factual allegations of the complaint, it is referenced in the complaint, and its authenticity as the report that BIG sold to Plaintiff's employer in December 2013 is not challenged.[4]

These documents provide additional information that we consider pertinent to our consideration of whether Plaintiff's injury as pled reflects a violation of Section 1681k.  The documents appended to Doc. 60 reflect the following:

---

[4]  Plaintiff did not make any formal response to Defendant's request, at Doc. 62, to take judicial notice of these documents.   In his brief in opposition to Defendant's motion to dismiss, he makes reference to these "certain parts of the Monmouth County, N.J. Small Claims Court public record" appended to Defendant's motion and characterizes it as "extrinsic evidence," suggesting that it was "impermissibly attache[d] to a Rule 12(b)(6) motion."  *See* Doc. 67-1 at 5.  He does not, however, address any of BIG's authorities that justify our consideration of these documents in these circumstances.

- Daniel Bento filed a civil action complaint on September 20, 2012 against "Michael Kelly," with an address in Monmouth Beach, New Jersey (Doc. 60, Ex. B);

- Following court-sponsored mediation on October 18, 2002 in the case of "Daniel Bento v. Michael Kelly," a Stipulation of Settlement was filed reflecting certain obligations of the defendant (*id.*);

- Mr. Bento filed a document entitled "Stipulation of Settlement and Default" on February 12, 2013, reporting that "Michael Kelly" had not made any of the payments agreed upon in the settlement agreement (*id.*);

- The court entered a final judgment on the docket on February 13, 2013[5] (Doc. 60, Ex. C);

- The TransUnion Database was purportedly searched on May 24, 2013 for "tax/attachment liens" regarding Michael A. Kelly (Doc. 60, Ex. A);

- On July 15, 2013, "Michael Anthony Kelly" filed a motion to amend judgment in the Monmouth County court regarding the Bento case, providing the June 10, 2013 letter from Mr. Bento that is reproduced in the Amended Complaint and representing that "Daniel Bento mistakenly filed a small claims civil action against me, Michael Anthony Kelly, for unpaid rent and other fees in the amount of $825.00 instead of my son, Michael Ryan Kelly" (Doc. 60, Ex. B);

---

[5]   This is consistent with the date of the civil judgment reported by BIG to Sun Life concerning the case brought by Daniel Bento purportedly against "Michael A. Kelly."   *See* Doc. 60, Ex. A.

- On July 29, 2013, the court granted the motion to amend judgment, which had been captioned on the signed proposed order by the moving party as "Daniel Bento v. Michael Anthony Kelly," adding, "Judgment amended to read Michael R. Kelly" (*id.*);

- On September 25, 2013, the court issued an Amended Civil Action Order for Judgment, referring to the matter having come before the Court on October 18, 2012, and ordering that "judgment be and the same is hereby entered in favor of Daniel Bento and against Michael R. Kelly in the sum of $750.00 together with costs"; caption reads "Daniel Bento v. Michael R. Kelly" (*id.*);

- On December 19, 2013, Sun Life requested a report on Michael A. Kelly, providing his social Security Number, date of birth, and a current address; the address matched the address attributed to the debtor in the action that Mr. Bento filed against "Michael Kelly" (Doc. 60, Ex. A);

- The portion of the "Due Diligence Profile" report produced by BIG for Sun Life concerning Michael A. Kelly, delivered on December 23, 2013, included a section concerning "Tax/Attachment Liens," which was reported with the comment, "Last update: 12/19/2013."  It noted TransUnion Databases as the source searched, and represented the "date of search" as "5/24/2013 (Updated 12/19/2013)."  It reported that in the Circuit Court of Freehold, NJ, a "civil judgement" [sic] was filed on February 13, 2013 involving Plaintiff Daniel Bento and Defendant "Michael A. Kelly" in the amount of $750.  The docket/file number was provided, matching the docket number of the documents appended

to Doc. 60 at Ex. B.   The "status" and "status date" fields were both marked "not

available."   A "comments" field was marked "none."   (*Id.*)

### D.   Plaintiff has plausibly alleged in the amended complaint that the public record information reported by BIG to Sun Life was not "compete and up to date."

Kelly believes that he has stated a violation under Section 1681k(a)(2) that a report

produced as to him of public record information was not "complete and up to date" where the

report "did not reflect the complete record," in that "identifiers in the court records" ---

specifically, middle initial "R" in the name of the judgment debtor --- "were missing from [BIG]'s

report [to Sun Life] and those missed identifiers confirmed that the record [of the $750.00

judgment obtained in Monmouth County] did not belong to Plaintiff."   (Pl. Br. in Opp., Doc.

67-1, at 2.)   He also contends that the public record information reported was not "complete and

up to date" because it failed to reflect that the judgment had been "satisfied," as "the court records

confirmed that the debt had been paid."   (*Id.*)

BIG contends that the public record information it reported was not, as a matter of law,

"incomplete" because it included personal identifiers of the purported judgment debtor: first and

last names, and middle initial.   It argues that the inclusion of a *wrong* middle initial does not

render the report "incomplete."   (Def. Br., Doc. 60-1, at 5.)   BIG also contends that the

information it provided in the consumer report was not "outdated" in that, contrary to Plaintiff's

implied assertion that the civil judgment in the Monmouth County case had been "satisfied" before

BIG reported on it to his employer,[6] the judgment it reported as to Kelly had not been *legally* satisfied as defined by New Jersey law.

We conclude that Plaintiff's Amended Complaint plausibly pleads a violation of § 1681k where he has averred that BIG did not provide him notice, it employed no procedures to ensure that the public record information it produced was complete and up to date, and where at the time BIG reported the public record information to Sun Life, the public record information was not complete and up to date, as it failed to reflect a critical amendment to the judgment. We reach this conclusion accepting Plaintiff's averments, as corroborated by the documents of which we have taken judicial notice for purposes of this motion, that the judgment in the Monmouth County case had been amended months earlier --- "updated," we would say, in the context of § 1681k --- to clarify that the judgment debtor defendant was not "Michael Kelly" but "Michael R. Kelly." Plaintiff has adequately pled that BIG reported as "current" a judgment that had *never* been taken against Michael A. Kelly, the subject of the report, and which months earlier had been amended --- on the motion of *Michael A. Kelly* --- to reflect that the debtor was Michael R. Kelly. The documents in the pleadings thus support Plaintiff's averment that BIG's "civil public records are not up to date[,]" (Am. Compl. at p. 4) and that its "reporting of the New Jersey civil judgment was out of date (*id.* at ¶ 25). *See also id.* at ¶ 27 ("The report Defendant sold regarding the Plaintiff was not up to date.").[7] These documents also show the plausibility of Plaintiff's averment that

_____

[6]  Plaintiff seeks to represent persons as to whom an "unsatisfied civil judgment" was reported but where "the actual courthouse or clerk's file for that record showed that the judgment had been satisfied at least thirty (30) days before the consumer report was furnished." (Am. Compl. ¶ 43.)

[7]  Put another way, BIG's report misrepresented that it was conveying the state of the public record as of December 19, 2013 concerning a judgment against Michael A. Kelly when, as of that

*(continued…)*

"Defendant fails to maintain strict procedures designed to ensure that it does not furnish out of date civil judgments or tax liens that have been satisfied, vacated, or otherwise dismissed after being initially entered."  (*Id.* at ¶ 28.)[8]

## IV.    CONCLUSION

Plaintiff has sufficiently pled that he was harmed by the dissemination of stale information obtained from a public record, passed off as if it were "up to date."   The Amended Complaint, coupled with the public record items of which Defendant asks us to take notice and with the actual report produced to Sun Life and referenced in the Amended Complaint, supports a plausible pleading by Plaintiff of the production by BIG of adverse public record information that did not reflect what the current public record showed.   The statute explains that a public record item "shall be considered up to date if the current public record status of the item at the time of the report is reported."   15 U.S.C. § 1681k(a)(2).   As evidenced by these pleadings, it was not.

Regardless of whether the Amended Complaint also sought to demonstrate that BIG was not in compliance with § 1681k because BIG did not report all of the identifiers in the public record item and BIG did not report that the debt was "satisfied," we conclude that he has sufficiently alleged that BIG is liable to him under § 1681k(a)(2) for reporting the February 2013 judgment obtained by Daniel Bento that was amended several months prior to the report to reflect

---

date, no such judgment existed.

[8]   We are inclined to agree with Defendant that Plaintiff's Amended Complaint is not saved by his averment that, in order for the report to be "complete and up to date" as to this judgment, the judgment had to be reported as "satisfied."   *See* Am. Compl. ¶ 30.

the judgment debtor was Michael R. Kelly.   For these reasons, Defendant's motion to dismiss Count II of the Amended Class Complaint will be denied.   An appropriate order will follow.