IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL KELLY, on behalf of himself and all others similarly situated | : : : | |
| v. | : : | CIVIL ACTION NO. 15-6668 |
| BUSINESS INFORMATION GROUP, INC. | : : | |

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                     January  31, 2019

### Table of Contents

I.    INTRODUCTION ................................................................................................ 2

II.   BACKGROUND ................................................................................................. 2

III.  CLASS CERTIFICATION ................................................................................ 10

     A.    The proposed settlement classes satisfy Rule 23(a). ........................................ 11

         1.    Numerosity ........................................................................................... 11

         2.    Commonality ........................................................................................ 11

         3.    Typicality ............................................................................................. 12

         4.    Adequacy of Representation ................................................................. 13

     B.    The proposed Injunctive Relief Settlement Class satisfies Rule 23(b)(2). ......... 14

     C.    The proposed Rule 23(b)(2) Subgroup Settlement Class and the Automatic
         Payment Settlement Class satisfy Rule 23(b)(3). ............................................... 14

         1.    Common questions of law and fact predominate over individual
             questions. ............................................................................................. 15

         2.    A class action is the superior method for resolving the class members'
             claims. ................................................................................................. 16

     D.    Conclusion ........................................................................................................ 17

IV.    THE SETTLEMENT AGREEMENT ........................................................................ 17

V.    ATTORNEYS' FEES AND COSTS .................................................................... 28

    A.    Percentage of recovery .................................................................... 30

    B.    Lodestar ........................................................................................... 37

        1.    Hourly rate .......................................................................... 38

        2.    Number of hours ................................................................. 39

VI.    SERVICE AWARD ........................................................................................... 41

VII.    CONCLUSION ................................................................................................. 42

## I.    <u>INTRODUCTION</u>

Plaintiff Michael Kelly ("Plaintiff" or "Kelly") brought a consumer class action against Defendant Business Information Group, Inc. ("BIG"), under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA").  Pending before the Court are Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. 148), as well as Plaintiff's Motion for Award of Attorneys' Fees and Reimbursement of Expenses (Doc. 149).  For the reasons set forth below, the Court will grant both motions.

## II.    <u>BACKGROUND</u>

Kelly filed a "Class Complaint" against BIG on December 17, 2015 on behalf of himself and others similarly situated in relation to consumer report background checks furnished by BIG for employment purposes.  (Doc. 1.)  Kelly alleged he was denied employment opportunities due to adverse public record information that was included in a consumer report that BIG furnished to his employer in December 2013.  He characterized the report as having contained materially false information, as it stated that a court case had been filed against him for an unpaid debt that did not, in fact, belong to him.  Moreover, he was not given any notice by BIG that a credit

report with this adverse public record item was being produced to his employer. In Count One, Kelly asserted an individual claim under 15 U.S.C. § 1581e(b), which requires that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information" concerning the individual who is the subject of a report. Count Two asserted a violation of 15 U.S.C. § 1681k, which concerns additional obligations of consumer reporting agencies that produce for employment purposes consumer reports that contain public record information.[1] Count Two consisted of Kelly's individual claim for relief under § 1681k as well as a class claim under Rule 23, which sought to include the § 1681k claims of those as to whom BIG had produced a consumer report for employment purposes that contained a public record where BIG did not mail to the subject of the inquiry a same-day written notice that it was furnishing the subject report to the particular recipient. (Compl., ¶ 28.)

BIG answered the complaint on April 1, 2016 (Doc. 13), and thereafter the parties consented for a magistrate judge to "conduct civil actions or proceedings" pursuant to Fed. Civ. Proc. R. 72. Following an agreed-upon informal stay of proceedings for several months during the pendency of a case in the United States Supreme Court, we convened a Rule 16 conference and entered a scheduling order. On October 3, 2016, BIG filed both a Motion for Partial Judgment on the Pleadings, seeking the dismissal of the claim brought under 15 U.S.C. § 1681k at Count Two of the complaint, and a Motion to Strike Class Allegations. (Docs. 38, 39.) Following briefing, the Court issued a Memorandum Opinion and Order, granting the motion to dismiss Count Two based upon defects in Kelly's pleading as to the nature of the defective

---

[1] This section requires the consumer reporting agency either to provide notice to the consumer of the production of a report with adverse public record information or to "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." 15 U.S.C. § 1681k(a)(2).

public record item reported as to him and in light of the text of § 1681k(a)(2), which provides a cause of action only for a report that was not "complete and up to date." (Docs. 50, 51.) The motion to strike the class allegations was denied without prejudice as moot. (Doc. 57.)

Having been granted leave to do so, Kelly filed an amended complaint on January 17, 2017. (Doc. 57, 58.) The amended complaint repeated the allegations of the § 1681e(b) claim previously asserted in Count One but adjusted the allegations of the proposed class claim under § 1681k in Count Two. This amended complaint sought the designation of two classes: the Satisfied Judgment Class and the Incomplete Identifiers Class. (Doc. 58.) The class definitions built off of the definition used in the original complaint, but as to the Satisfied Judgment Class, it pertained to reports produced that contained at least one record of "an unsatisfied civil judgment" when "the actual courthouse or clerk's file for that record showed that the judgment had been satisfied at least thirty (30) days before the consumer report was furnished." (Doc. 58 at ¶ 43.) The Incomplete Identifiers Class was to apply to the circumstances where "the actual courthouse or clerk's file for that record showed that the judgment was the responsibility of a person who had a different middle name, middle initial, date of birth and/or social security number than the one Defendant's files showed to belong to the subject of the consumer report[.]" (*Id.* at ¶ 44.)

BIG filed a motion on February 24, 2017 to dismiss the amended complaint, again asserting that the pleading of a § 1681k claim in Count Two was defective. (Doc. 60.) It also again moved to strike the class allegations asserted in Count Two. (Doc. 61.) Following briefing, the Court issued a Memorandum Opinion and Order on June 22, 2017 denying the motion. We concluded that Count Two adequately pled that the public record item reported as to Kelly was not "complete and up to date." (Docs. 74, 75.) We also denied the motion to

strike the class allegations.  (*Id.*)

Following resolution of these preliminary motions, BIG filed its answer to the amended complaint and the Court issued a scheduling order.  Within a few months, however, the parties agreed to participate in class-wide settlement discussions and scheduled a session with a private mediator.  Accordingly, at the request of the parties, in November 2017 the Court stayed many of the deadlines set forth in the scheduling order.  The parties continued to update the Court on the status of their settlement efforts over a period of the next six months until, on May 17, 2018, Plaintiff filed his Motion for Preliminary Approval of Class Action Settlement and Notice to Class.  (Doc. 99.)

Pursuant to the parties' settlement agreement, BIG will change its practice in one of the areas that gave rise to the suit by providing "same time" notice to the consumer of that fact that a prospective employer would be receiving from BIG a credit report containing public record information sourced by Trans Union LLC concerning bankruptcy filings, liens, or civil judgments.  This obligation will remain in effect for five years from the effective date of the agreement, which is defined in paragraph 1.9 of the agreement.  The agreement also provides for a dispute resolution process if any settlement class member has a claim or dispute regarding BIG's compliance with its obligations under the injunctive order that it asks the Court to issue. Pursuant to the agreement, BIG will also establish a Settlement Fund of $3,300,000 to be used for monetary compensation to two of the three sets of settlement class members established through the agreement, for costs of notice and settlement administration, for an individual settlement and service award to Mr. Kelly as the Class Representative, and for fees and costs for Class Counsel.  The settlement classes are defined as:

> The Injunctive Relief Settlement Class:
> All natural persons residing in the United States (including all

territories and other political subdivisions of the United States) (i) who were subject to at least one BIG consumer report sourced from Trans Union from December 17, 2010 to the date of the order for preliminary approval of the Settlement is entered by the Court, (ii) whose report contained a public record.

The Rule 23(b)(2) Subgroup Settlement Class, a subgroup of the Injunctive Relief Class:
All Injunctive Relief Settlement Class Members, (i) who were subject to at least one BIG consumer report dated December 17, 2013 to June 27, 2016, (ii) where the consumer report contained a public record, other than a bankruptcy, sourced from Trans Union, and (iii) where BIG's records do not reflect the Settlement Class Member filed any dispute with BIG with respect to the above-referenced report.

The Automatic Payment Settlement Class:
All natural persons residing in the United States (including territories and other political subdivisions of the United States) (i) who were subject to at least one BIG consumer report dated December 17, 2013 to June 27, 2016, (ii) where the consumer report contained a public record sourced from Trans Union (iii) where BIG's records reflect that the Settlement Class Member filed a dispute with BIG with respect to the above-report.

Settlement Agreement, ¶¶ 2.2(a)-(c) (Doc. 99-2). When entering into the Settlement, the parties believed that the Injunctive Relief Settlement Class consisted of approximately 276,000 members, including 88,000 in the Rule 23(b)(2) Subgroup Settlement Class, and that the Automatic Payment Settlement Class consisted of approximately 865 members.

The Settlement Agreement provided that monetary compensation would be allocated to Settlement Class Members based upon their membership in either the Automatic Payment Settlement Class or the Rule 23(b)(2) Subgroup Settlement Class. The Settlement allocates $1,500,000.00 to the Automatic Payment Class. Payments will be awarded to members of the Automatic Payment Class on a pro rata basis on a point awarded system. Each member of the Automatic Payment Class will receive 1 point by virtue of their inclusion within that Class. Each member of the Automatic Payment Settlement Class who (i) returns a claim form that

identifies a specific public record or records included within their BIG report and (ii) attests to the inaccuracy of those records as they relate to that Class Member shall be awarded an additional 9 points. Each member of the Automatic Payment Class that submits documentary evidence demonstrating that the Class Member has suffered damages as a result of the publication of the public record(s) at issue shall be awarded an additional 10 points. The Settlement separately allocates $500,000.00 to the Rule 23(b)(2) Subgroup. Members of the Subgroup will receive a payment on a pro rata basis if they file a claim form averring that their report was either incomplete or outdated as to the public record information and that they suffered harm as a result. This group need not identify the particular public record nor describe the harm in order to qualify for their payment as a Rule 23(b)(2) Subgroup class member.

The Settlement Agreement provides that members in each class also release certain claims. Members of the Injunctive Relief Class release only their ability to bring class action, mass action, representative or other similar joint or collective claims against the Released Parties under the FCRA and similar state and local laws but do not release any claims for actual damages, statutory damages or punitive damages, unless they are members of the Rule 23(b)(2) Subgroup Settlement Class. The Rule 23(b)(2) Subgroup Settlement Class Members will additionally release all 15 U.S.C. § 1681k claims, and claims arising under state and local laws similar in substance to section 1681k. Automatic Payment Settlement Class Members release all claims under the FCRA and similar state and local laws, including claims for statutory damages, actual damages, punitive damages and attorneys' fees and costs. Settlement Agreement ¶¶ 3.1-3.3.

Following oral argument on June 28, 2018, we granted preliminary approval of the parties' settlement of the Section 1681k claim and directed that notice be made to the classes.

(Doc. 103.)  As part of this decision, the Court provisionally certified the classes for settlement purposes and directed that BIG furnish a list of the class members in each class.  We then directed that the notices proposed by the parties be sent by the claims administrator via first class mail to all class members.  We found that this method of giving notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and due process, and that it constituted the best notice practicable under the circumstances.  Finally, the Court scheduled a fairness hearing for November 1, 2018:

> (a) To determine whether the proposed settlement is fair, reasonable and adequate and should be granted final approval by the Court;
> (b) To determine whether a final judgment should be entered dismissing the claims of the Settlement Classes with prejudice, as required by the Settlement Agreement;
> (c) To consider the application of Class Counsel for an award of attorney's fees and expenses, and for an individual settlement and service award to the Class Representative; and
> (d) To rule upon other such matters as the Court may deem appropriate.

(Doc. 103.)

The parties complied with the terms of the Preliminary Approval Order.  BIG provided the settlement claims administrator a list of names and addresses of the class members.  On August 10, 2018, the claims administrator mailed (and re-mailed as necessary thereafter) notices to 268,178 individuals.  The members were advised to respond with any claim form, exclusion request, or objection by October 9, 2018.

As of October 22, 2018, based upon mail returned or deemed undeliverable and the Claims Administrator's certification, it is believed that 261,488 settlement class members received notice.  *See* ALCS Decl., ¶¶ 6, 8 (Doc. 148-2).  Five class members in the Rule 23(b)(2) Injunctive Relief Class requested exclusion from the settlement prior to the deadline of

October 9, 2018.  No other members sought exclusion.  *Id..*, ¶ 10.  Thirty-four class members also directed objections or other correspondence to the Court in response to the notice.  All but two of the objections were from members of the Injunctive Relief Class.  Three of these objectors later formally withdrew their objection.  Many of the other pieces of correspondence that were docketed reflect complaints with the credit reporting industry generally or the wish of an Injunctive Relief Class member to be included in the Automatic Payment Class.  Few stated any specific objection to any particular term of the Settlement Agreement or the proposed class resolution.  *See* Mem. in Supp. of Final Approval, at Ex. 2 (Doc. 148-3).

On November 1, 2018, the Court held a fairness hearing, during which the parties described how they reached their agreement and how the agreement had been effectuated to that point.  They also responded to a number of questions of the Court.  Although the notices to the class members concerning the litigation had provided information about the hearing, no objectors or any other persons appeared to be heard.

Following review of the materials submitted by the parties in connection with the settlement, and following upon the November 1, 2018 final fairness hearing, the Court will grant Plaintiff's Motions for Final Approval of Class Action Settlement and for Award of Attorneys' Fees and Reimbursement of Expenses.  The Court will certify three classes; find the settlement to be fair, reasonable, and adequate; approve the awards to the attorneys and to Mr. Kelly; enter an Injunctive Relief Order as proposed by the parties; and enter a final judgment dismissing the case pursuant to the terms of the parties' agreement.

## III.   CLASS CERTIFICATION

Plaintiff asks that the Court certify the three classes defined above. To prevail on a motion for class certification, the plaintiff seeking to sue as a representative party on behalf of a class must satisfy all of the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of one of the subsections of Rule 23(b). The four requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable [numerosity];
> (2) there are questions of law or fact common to the class [commonality];
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and
> (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

Fed. R. Civ. P. 23(a). With respect to the Rule 23(b) requirements, Plaintiff here seeks certification of the Injunctive Relief Settlement Class pursuant to Rule 23(b)(2) and certification of the Rule 23(b)(2) Subgroup Class and the Automatic Payment Class pursuant to Rule 23(b)(3). The rules provide as to Rule 23(b) the following:

> (b) TYPES OF CLASS ACTIONS. A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) …; [or]
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

**A.     The proposed settlement classes satisfy Rule 23(a).**

**1.     Numerosity**

Rule 23(a)(1) requires that a class be so numerous that joinder of all of its members is impracticable.  The Third Circuit has suggested that the numerosity requirement will generally be satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40," *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001), and in other cases has found the numerosity standard met with as few as 90 class members.  *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985) (90 class members met numerosity requirement).  *See also Weiss v. York Hospital,* 745 F.2d 786, 808 (3d Cir. 1984) (92 class members met the numerosity requirement).

Here, the Class List provided by Defendant consisted of over 268,000 consumers: 180,209 in the Injunctive Relief class, 87,103 in the Rule 23(b)(2) Subgroup Settlement Class, and 866 in the Automatic Payment Settlement Class.  ALCS Decl., ¶ 4.  This is sufficient to establish that joinder is impracticable.  The Court thus finds that Rule 23's numerosity requirement is satisfied as to all three classes.

**2.     Commonality**

Rule 23(a)(2) requires the existence of questions of law or fact common to the class.  A putative class satisfies Rule 23(a)'s commonality requirement if "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *Baby Neal v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994).  The Court of Appeals has reiterated that:

> [T]hat bar is not a high one.  We have acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, when plaintiffs did not bring identical claims … and, most dramatically, when some plaintiffs' claims may not have been legally viable…[.]   In reaching those conclusions, we explained

that the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is "on whether the defendant's conduct was common as to all of the class members."

*Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (citations omitted).

The factual and legal questions in this case focused largely on the uniform conduct and procedures of BIG that were common to members of the Settlement Classes. These questions included whether BIG willfully and negligently violated § 1681k of the FCRA by uniformly failing to provide job applicants who were the subjects of consumer reports containing public record information with notice, while at the same time allegedly failing to maintain strict procedures to insure that the public record information it shared was complete and up to date. Defendant's practices with respect to the members of the Settlement Classes were uniform in that BIG's practice was not to provide consumers with notice but rather to rely upon its procedures for compliance with § 1681k. In addition, it was Defendant's uniform procedure with respect to all Settlement Class Members to obtain its public record information (except for bankruptcies) from Trans Union, LLC.

The theory of liability for the Settlement Classes arose from the same standards and practices of BIG and presented certain questions that were common to all members of each class. The Court thus finds that Rule 23's commonality requirement is satisfied as to all three classes.

### 3. Typicality

The typicality requirement of Rule 23(a)(3) assesses whether the interests of the class representative are "typical of the class as a whole" and are aligned with the interests of the class "so that the [class representative] will work to benefit the entire class through the pursuit of [his] own goals." *In re Prudential Ins.*, 148 F.3d 283, 311 (3d Cir. 1998). Typicality does not mandate that the claims of the class members be identical. Rather, the typicality requirement is

satisfied if the claims arise "from the same event or practice or course of conduct" and are "based on the same legal theory." *Baby Neal*, 43 F.3d at 58.

Here, Kelly would qualify for membership in the settlement classes[2] and has the same interest in resolution of the issues as all other members of the classes. His claims are typical of all members of the Classes, and he was affected by the Defendant's practices in the same manner as all members of the Classes to the extent that public record information was reported about him allegedly in the absence of both notice and strict procedures to ensure completeness and currency of the public record information. Plaintiff's claims are typical of the facts and claims of all other members of the proposed Settlement Classes. *See Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir. 1988). Therefore, the Court finds that the Rule 23(a)(3) typicality requirement is satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) contemplates that a representative plaintiff provide fair and adequate protection for the interests of the class. Adequate representation involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class. *See, e.g., Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Mr. Kelly has fairly and adequately represented the interests of the Settlement Classes. He has retained qualified and experienced attorneys --- Francis & Mailman, P.C., of Philadelphia; Consumer Litigation Associates, P.C., of Newport News and Alexandria,

---

[2]  Inasmuch as Kelly made a complaint to BIG concerning the public record information it reported on him, he would be excluded from the Rule 23(b)(2) Subgroup of the Injunctive Relief Class.

Virginia; and Kelly & Crandall, PLC, of Fairfax, Virginia --- who have substantial experience in class action and FCRA consumer litigation and who are qualified to conduct the litigation. Counsel for Plaintiff has represented that Mr. Kelly has no interests that are antagonistic to the interests of the Classes and that he is unaware of any actual or apparent conflicts of interest between himself and the Classes. Mem. in Supp. of Final Approval at 13. We thus find that the Rule 23(a)(4) requirement of adequacy is satisfied.

**B.      The proposed Injunctive Relief Settlement Class satisfies Rule 23(b)(2).**

A settlement providing equitable relief to a class of persons must also meet the requirement of Rule 23(b)(2) that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Certification of a class to receive injunctive relief is appropriate here in that the interests of class members is uniform where the harm alleged was homogenous and flowed from the same business practice of BIG. Similarly, the uniform relief sought as to changes to the business practices of BIG makes class-wide representation possible and opt-out rights unnecessary. *See, e.g., Berry v. Schulman*, 807 F.3d 600, 612 (4th Cir. 2015) (affirming approval of hybrid FCRA class settlement under both Rule 23(b)(2) and (3) where relief sought and interests of class members were uniform).

**C.      The proposed Rule 23(b)(2) Subgroup Settlement Class and the Automatic Payment Settlement Class satisfy Rule 23(b)(3).**

Where class members will recover money damages, the proposed class must satisfy Rule 23(b)(3), which requires that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and, (2) "a class action is superior to other available methods for the fair and efficient adjudication of the

controversy." Fed. R. Civ. P. 23(b)(3). For the reasons set forth below, the two proposed classes that will receive a monetary award under this agreement --- the Rule 23(b)(2) Subgroup Settlement Class and the Automatic Payment Settlement Class --- meet these requirements.

### 1. Common questions of law and fact predominate over individual questions.

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation[.]" *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310-11 (3d Cir. 2008) (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)). This requirement is normally satisfied "when plaintiffs have alleged a common course of conduct on the part of the defendant." *Perry v. FleetBoston Fin. Corp.,* 229 F.R.D. 105, 113 (E.D. Pa. 2005) (citing *In re Prudential*, 148 F.3d at 314-15).

Plaintiff alleged on behalf of the classes that BIG failed to comply with section 1681k of the FCRA by failing to provide contemporaneous notice to consumers about whom it reported public record information for employment purposes, and also failing to maintain strict procedures to insure that the public record information it reported was complete and up to date. The internal policies and procedures that BIG followed in preparing reports containing public record information and notifying (or, as here, failing to notify) consumers about the sale of such reports to employers were common to all members of the Settlement Classes. The class members were all exposed to the same policy or practice of Defendant. Nothing about the class members' behavior or conduct impacts the case; it is BIG's actions that are implicated. The factual issues central to Plaintiff's claims reflect common issues of fact that predominate over individual issues.

With respect to common legal issues, Plaintiff claimed on behalf of the Classes that BIG's alleged compliance failures were "willful," *i.e.*, that there was no objectively reasonable

interpretation of the FCRA that would have supported BIG's view that it was permissible to both fail to provide "at the time" notice to job applicants regarding the sale of public record information to prospective employers, while allegedly failing to use strict procedures to insure that the public records it sold were complete and up to date. This legal issue was common to all members of these Settlement Classes and predominates over individual legal issues.

## 2. A class action is the superior method for resolving the class members' claims.

In light of the superiority requirement of Rule 23(b)(3), we must balance, in terms of fairness and efficiency, the merits of a class action against the merits of alternative methods of adjudication. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005).

Class settlement is the most efficient means of adjudicating the disputes raised here. First, the statutory claims of each member are relatively small, such that individuals could lack the incentive to bring suit on their own. The class action device remedies this imbalance. Second, separately litigating the common issues that bind the classes would be a practical impossibility, assuming consumers had notice of their claims and it were economically feasible to pursue these claims on their own. There is a strong presumption in favor of a finding of superiority where the alternative to a class action is likely to be no action at all for most of the class members. In addition, a class action in this case prevents the filing of thousands of separate lawsuits raising the same factual and legal issues and thus contributes to the more efficient administration of justice. Even if just a small fraction of the members of the Settlement Classes were to bring individual suits, the resolution of common issues in a single proceeding here would be infinitely more efficient than the separate adjudication of individual claims in separate lawsuits across the country.

## D.     Conclusion

The proposed Rule 23(b)(2) Subgroup Settlement Class and the Automatic Payment Settlement Class satisfy Rule 23(b)(3).  The third proposed class, the Injunctive Relief Class, satisfies Rule 23(b)(2).  All three proposed classes satisfy the criteria of Rule 23(a).  The Court will therefore give final certification approval to these classes, excluding the five members of the Rule 23(b)(2) Subgroup Settlement Class who have asked to be excluded.  *See* ALCS Decl. at Ex. A (Doc. 148-2).

## IV.     THE SETTLEMENT AGREEMENT

Plaintiff also seeks final approval of the settlement reached with BIG, which addresses, *inter alia*, BIG's obligations as to each of the classes, the manner in which those obligations will be effectuated, and the releases to which BIG is entitled.

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  Before approving a settlement, we must determine that the proposed settlement is "fair, reasonable and adequate."  *In re Prudential*, 148 F.3d at 316.

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), our Court of Appeals identified a set of factors with which to assess the fairness, adequacy, and reasonableness of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157. In *In re Prudential Ins.*, 148 F.3d 283, 311 (3d Cir. 1998), the Third Circuit later suggested an expansion of these factors, when appropriate, to include other considerations such as:

> the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved — or likely to be achieved — for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Prudential*, 148 F.3d at 323. District courts "must make findings as to each of the *Girsh* factors, and the *Prudential* factors where appropriate," and "cannot substitute the parties' assurances or conclusory statements for [their] independent analysis of the settlement terms." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350-51 (3d Cir. 2010).

As we ascertain whether the proposed settlement is reasonable, we bear in mind the uncertainties of law and fact that come with each case and the risks and costs inherent in litigating any matter to completion. Inasmuch as a settlement reflects an exercise of judgment by the negotiating parties, the Court's role in reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving any issues that the parties intentionally left unresolved. *See generally Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799 (3d Cir. 1974). A settlement results from a process by which opposing parties weigh and balance the factual and legal issues. In reaching the settlement, the parties have chosen not to risk pursuing their claims or defenses to final resolution. We value the views of experienced

counsel on each side as to the merits of a settlement. *See Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class").

In this case, the *Girsh* factors delineated below, as well as the relevant *Prudential* considerations, weigh in favor of settlement approval.

### (1) The complexity, expense and likely duration of the litigation

Absent the settlement, the parties would have to proceed with further discovery, a motion for class certification, probably summary judgment proceedings and ultimately, perhaps, to trial. Even if Plaintiff were to prevail on class certification and then successfully defeat a motion for summary judgment, a lengthy and expensive trial would most likely ensue. Both sides would invest significant time and expenses in trial preparation. Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

### (2) The reaction of the class to the settlement

As set forth above, notice was directly mailed to members of the Settlement Classes advising them of the terms of the Settlement and, as to the members of the Rule 23(b)(2) Subgroup and the Automatic Payment Class, their right to exclude themselves from the settlement. The deadline for Settlement Class Members to object and to exclude themselves (where applicable) was a postmark deadline of October 9, 2018. At the time Plaintiff filed his motion for final approval of the settlement on October 22, 2018, the Settlement Administrator had contacted 260,967 class members with the notice appropriate to their settlement class and

received only five exclusion requests, all of which came from members of the Rule 23(b)(2) Subgroup. *See* ALCS Decl., ¶ 10 (Doc. 148-2).

The Court received a number of pieces of correspondence from 34 different persons that we directed the Clerk of Court to docket. Some expressed frustration about inaccuracies in records gathered by Trans Union, which is not a party to this litigation. Many indicated that they did not understand why they were in a particular class and not one that would involve a greater monetary award.[3] Several demonstrated a misunderstanding of the Settlement terms, with some members of the Injunctive Relief Settlement Class, for example, expressing their desire for individual awards, which are not provided to them under the terms of this agreement. *See, e.g.,* Doc. 108 (seeking $10,000); Doc. 136 (seeking $15,000); Doc. 128 (seeking $3 million); Docs. 123 & 151 (seeking $15.5 million for several generations of the writer's family). Many of the "objections" were not to the terms of the Settlement *per se* but to BIG's business practices generally and to the impact of credit reporting or public record reporting in our society. Class counsel reached out to these individuals in an attempt to answer their questions and, where appropriate, explain their right to bring an individual claim, offering attorneys who would assess the strength of any such individual claim. *See* Doc. 148-3 (describing efforts of class counsel).

We do not wish to minimize the difficulties of those who were denied employment opportunities or who suffered aggravation or distress as the result of incomplete or out of date public record information reported about them. This litigation, however, could only seek to

---

[3]  Counsel assured us at the hearing that where members challenged their status or class membership, class counsel checked with BIG or the settlement administrator. Similarly, counsel for BIG assured us that they keep records of those who have made a complaint and are thus confident that they correctly identified the members of the Automatic Payment Class.

correct the harm that was similar to the § 1681k violation alleged by Kelly, and the settlement quite reasonably prioritized monetary relief for those persons most likely to have been harmed in this manner: those who made a complaint to BIG. The very minimal number of exclusion requests and true objections to the settlement terms support a finding that the proposed settlement is fair and adequate. *See, e.g., Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding settlement strongly favored even when there were 29 objections in a class of 281 members); *Stoner v. CBA Info. Servs.*, 352 F. Supp.2d 549, 552 (E.D. Pa. 2005) (characterizing class reaction as "more than favorable" where only 5 of 11,980 class members objected and 18 opted-out).

As a result of the dissemination of notice to the class, there were but a few opt outs and a few objectors who demonstrated that they understood the scope of the settlement and the limited nature of the FCRA provision at issue. The reaction of the class to the proposed settlement counsels in favor of approval.

### (3) The stage of the proceedings and the amount of discovery completed

An important aspect of the Court's role in ensuring that a proposed settlement is the product of informed negotiation is its inquiry into the type and amount of discovery the parties have undertaken. As the Third Circuit cautions, "[t]he parties must have an adequate appreciation of the merits of the case before negotiating." *In re Prudential*, 148 F.3d at 319.

The parties reached the settlement in this matter after assessing the relative strengths and weaknesses of their claims and defenses as a result of two rounds of dispositive motions under Rule 12, the first of which led to the amendment of the complaint as to the class claim asserted by Plaintiff. The parties also engaged in paper discovery that concerned: the consumer reports provided by BIG to Plaintiff's potential employer that included public record information likely

to adversely affect his ability to obtain employment; information as to whether BIG provided notice to consumers at the time the reports were provided to their prospective employers; and information regarding the procedures maintained by BIG to ensure the public record information reported about consumers for employment purposes was complete and up to date. Most significantly, the parties participated in a full-day mediation with a reputable private mediator, Rodney A. Max, Esquire, of Upchurch Watson White & Max mediation group,[4] and engaged in numerous follow-up telephone calls and conferences. The settlement agreement underwent many drafts and was the subject of much discussion. *See* Mem. in Supp. of Prelim. Approval at 2-4 (Doc. 99-1).

While the parties did not take any depositions before reaching their settlement, we are satisfied that, through the efforts described above, this settlement represents an informed resolution of the case. *See, e.g., Bonett v. Education Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *6 (E.D. Pa. May 9, 2003) (approving settlement where the litigation had reached the stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases"). This factor weighs in favor of approving the settlement agreement.

### (4) The risks of establishing liability

While Plaintiff confidently professes that he could establish that BIG's actions violated § 1681k when it sold this consumer report to his employer, BIG has also forcefully asserted that the public record information it reported was "complete and up to date" within the meaning of

---

[4] Mr. Max's experience is detailed on the website of the firm, in which he is a principal. He is a Distinguished Fellow and Past-President of the American College of Civil Trial Mediators and has led more than 5,000 mediations in a wide variety of cases. *See* https://www.uww-adr.com/biography/rodney-a-max (last visited Jan. 3, 2019).

§ 1681k(a)(2). Plaintiff would face a not insubstantial risk in establishing liability were this case to go to trial. BIG asserted several defenses to his Amended Complaint beyond those that were rejected in the Rule 12(b)(6) motion. These include statute of limitations and laches defenses, a challenge to the standing of class members who may not have suffered any harm or injury-in-fact from conduct fairly traceable to BIG, and an assertion that Mr. Kelly's claim may already have been fully satisfied by a third-party, such as Trans Union. (Doc. 79.) Settlement thus avoids a real risk that BIG would not be found liable to the fullest extent. Thus, this *Girsch* factor indicates that the parties' settlement should be approved.

### (5) The risks of establishing damages

The risk of establishing damages is closely tied to the risk of establishing liability. As stated above, it is not a foregone conclusion that Plaintiff would obtain a verdict and be entitled to damages. In lieu of actual damages, Plaintiff sought statutory damages on behalf of each class member. In order to secure such statutory damages, however, Plaintiff would have to establish willful, as opposed to negligent, noncompliance by BIG, and the amount of the award would depend on the nature, frequency, and persistence of noncompliance with the statute. *See* 15 U.S.C. §§ 1681n(a), 1681o(a). These difficulties have been avoided by virtue of the settlement crafted by the parties.

As implemented, the terms of the Settlement Agreement will provide an estimated recovery of approximately $92 to each Rule 23(b)(2) Subgroup Settlement Class Member. ALCS Dec., ¶ 12 (based on data as of Oct. 22, 2018). Thus, Plaintiff is recovering an amount close to the $100 statutory damages minimum for class members who never filed any dispute with BIG regarding the credit report sold to an employer and who presumably would have had greater difficulty establishing actual damages stemming from any § 1681k violation.

Moreover, these class members will receive this payment without even having to establish that the adverse public record information in their report was not "complete and up to date."

Each member of the Automatic Payment Settlement Class who could be located by the settlement claims administrator was eligible for a share of the monetary award simply by virtue of their class membership. This status applied to 774 persons at the time of the hearing. Of those, thirty-five members have filed a claim identifying an inaccurate public record in their report and, under the point system created in the Settlement Agreement, will receive approximately $10,997. Twelve others have provided supporting documentation of damages and will receive approximately $21,994 each. The remaining 727 members will receive approximately $1,100 each. Plaintiff is thus recovering an amount just above the maximum statutory damages figure for those hundreds of class members who filed a dispute with BIG about the consumer report that was issued as to them. And, for those who have pointed to the particular public record information included in their consumer report that was not "complete and up to date" or who have also provided documentation of damages they suffered, the settlement secures a substantial recovery for them in amounts that would have required them to establish actual and/or punitive damages at trial.

Thus, this Settlement avoids the litigation risk to the Settlement Classes and secures tangible and useful relief that may not be obtainable after trial. The risk of no damages, or a lower damages award at trial, as well as limitations on the Court's ability to award injunctive relief under the FCRA, supports final approval of the Settlement Agreement.

### (6) The risks of maintaining the class action through trial

This factor also identifies significant risks that weigh in favor or settlement. None of the proposed classes identified in the Settlement Agreement had been certified prior to

settlement. We would expect BIG to have vigorously opposed certification, and it would have had the option of pursuing an interlocutory appeal under Rule 23(f) if class certification were granted. Furthermore, Rule 23 permits a district court to decertify or modify a class if it proves to be unmanageable at any time during the litigation. *See In re Prudential*, 148 F.3d at 321. Thus, in the absence of the agreement, there were certainly risks that Plaintiff's efforts to proceed with a class action would fail. The settlement allows Plaintiff to avoid the delay and expense that would be associated with such proceedings and ensures that the class members enjoy the benefits of a class-based resolution.

### (7) The ability of the defendant to withstand a greater judgment

The ability of a defendant to withstand a greater judgment is a particularly relevant consideration when a settlement in a case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement. *See Reibstein v. Rite Aid Corp.,* 761 F. Supp.2d 241, 254 (E.D. Pa. 2011). As there is no evidence on record as to BIG's financial circumstances, however, this factor is neutral.

### (8) The reasonableness of the settlement in light of the best possible recovery;
### (9) The range of reasonableness of the settlement to a possible recovery in light of all the attendant risks of litigation

These last two *Girsch* factors, which we analyze together, confirm that the parties' settlement should be approved. We are satisfied that the recovery here exceeds the value of the best possible recovery discounted by the risks of litigation.

As to the members of the Rule 23(b)(2) Subgroup, the 5,409 members who submitted claim forms will receive approximately $92 (their pro rata share of the $500,000 allocated), without having to make any showing that the adverse public record information reported on them was incomplete or out of date, that they were denied employment opportunities as a

result of the credit report, or that there was a causal connection between the public record information in the report and the employment loss. Given that BIG has continued to vigorously deny Plaintiff's allegations, and that Plaintiff would have to prove willfulness at trial in order to achieve the statutory minimum award of $100 or else show actual damages, litigation carries several risks which make a $92 recovery seem appropriate in spite of the $1,000 recovery available under the statute. In addition, of course, this settlement offers an immediate benefit, whereas litigation would prolong resolution of this controversy.

For the class that has the strongest claim to damages, in that they lodged a complaint with BIG about their report, the settlement skews much more towards the best possible recovery and assumes proof of substantial actual damages or punitive damages. Here, however, the risks of litigation are less, as the class members' prior complaints serve to help validate the legitimacy of their assertion regarding defects in the public record information and their damages.

With respect to the Injunctive Relief Class, the value of the settlement is non-monetary. As Plaintiff's counsel explained at the hearing, whereas § 1681k contemplates notice being provided to the consumer "at the time of" the production of a report to the employer, the members of the Injunctive Relief Class will benefit for the next five years from the commitment by BIG to give notice in a particular manner and on a particular schedule. In addition, should BIG fail to comply with its obligations under the Settlement Agreement, the Injunctive Relief Class Members have recourse. Moreover, despite receipt of these benefits, the members in the Injunctive Relief class retain their right to bring any individual claims for damages and waive only their right to participate in a collective action arising from reports produced in the period between December 17, 2013 and June 27, 2016. We conclude that

these final *Girsch* factors counsel in favor the parties' settlement even as to the Injunctive Relief Class.[5]

In light of the questions of fact and law in this litigation, we agree that the value of the proposed settlement substantially outweighs the mere possibility of future relief. The expense of a trial and the use of judicial resources and the resources of the parties would have been substantial, and any judgment entered may well have been the subject of post-trial motions and appeals, further prolonging the litigation and reducing the value of any recovery. Thus, a settlement is advantageous to all concerned. Through the proposed settlement that the parties have reached, Plaintiff has obtained a very reasonable benefit for the Settlement Classes. The equitable relief in the form of the consent injunction is valuable both to the Settlement Classes as well as future subjects of BIG's business activities. It achieves a commitment from BIG not simply for compliance with § 1681k but according to specific terms which, as counsel explained at the hearing, have not heretofore been uniformly required under various courts' interpretations of § 1681k. Based on the information provided by Plaintiff, the monetary compensation available under the Settlement Agreement is in line with comparable settlements under the FCRA.

---

[5] We recognize that the agreement obligating BIG to provide "at the time of" notice to the consumer is limited to a period of five years. At the final approval hearing, it was noted that BIG might decide to continue to give notice even at the expiration of that period, as it will have become accustomed to this step in its business practice. It was represented by the parties that this was a negotiated term and reflects BIG's interest in maintaining flexibility in its business practices given evolving economic conditions, technology, and legal interpretations of § 1681k. The agreement on this point is also limited to public record information sourced by TransUnion, which is the only source that BIG currently uses for this purpose. Counsel for BIG represented at the hearing that BIG has no present intention of switching its supplier of public record information in order to avoid its notice obligations under the agreement. Class counsel noted that if BIG did so, it would expose itself to the risk of new litigation raising claims similar to those presented here.

### (10)    The *Prudential* factors

The relevant *Prudential* factors also indicate that this settlement should be approved. The underlying substantive issues are mature in light of the experience of the attorneys, the two rounds of dispositive motions on the class claim brought under § 1681k, and mediation efforts undertaken.  Moreover, class members in the Rule 23(b)(2) Subgroup and the Automatic Payment Class had the option to exclude themselves from the settlement and thus preserve their right to bring their own claim.  To be sure, the Rule 23(b)(2) members release only their § 1681k claims against BIG, while those receiving the larger payouts in the Automatic Payment Class agree not to bring any FCRA action against BIG arising from the time period covered in this litigation.  Members of the Injunctive Relief Class waive nothing by their inclusion in this class except their right to participate in a class action asserting this same violation.  The process by which class members can claim their award is fair, and, as will be explained below, the attorney's fees requested are reasonable.  Finally, it bears repeating that the settlement agreement brings about sought-after changes in BIG's practices that will inure to the benefit of many consumers for a period of at least five years.

The Court concludes that the proposed Settlement is within the range of reasonableness and should be approved.

## V.    ATTORNEYS' FEES AND COSTS

Federal Rule of Civil Procedure 23(h) provides that in a class action that has been certified, "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  The Fair Credit Reporting Act is one such law that authorizes the award of attorney's fees, *see* 15 U.S.C. § 1681n(a)(3), reflecting the legislation's intent to encourage attorneys to take small claims in order to serve the public

policy behind the statute. Here, however, BIG has already agreed to play Plaintiff's counsel as much as $1,100,000. *See* Mem. in Supp. of Mot. for Final Approval at 8. As our Court of Appeals cautions that "a thorough judicial review of fee applications is required in all class action settlements," *In re Prudential*, 148 F.3d at 333, we proceed to evaluate counsel's request.

Courts review attorneys fee requests utilizing either the lodestar method or the percentage-of-recovery method. The lodestar method is more commonly applied in statutory fee-shifting cases. It is designed to reward counsel for undertaking socially beneficial litigation in cases where the relief has such a small monetary value that a percentage-of-recovery fee would provide inadequate compensation or where the nature of the recovery does not allow the determination of the settlement's value amenable to the percentage-of-recovery method. The percentage-of-recovery method is generally favored where class counsel's efforts have achieved a common fund because it allows the court to award fees in a manner that rewards counsel for success and penalizes counsel for failure or waste. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005); *In re Prudential*, 148 F.3d at 333.

This case presents a hybrid case, as it involves both a common fund and a fee-shifting statute. In these circumstances, the court has discretion to employ either method. *See Brytus v. Spang & Co.*, 203 F.3d 238, 243 (3d Cir. 2000); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 737 n.20 (3d Cir. 2001). The court should cross-check its fee calculation with the unused method to determine that the award is reasonable. *See Sullivan v. DB Inv., Inc.,* 667 F.3d 273, 330 (3d Cir. 2011); *Rite Aid*, 396 F.3d at 300.

The parties here agreed that Plaintiff's counsel's fee would not exceed $1,100,000, or 33.3% of the total Settlement Fund. Plaintiff instead seeks a slightly reduced award of

$1,035,000 for fees and costs, which represents 31% of the Fund. He suggests we use the percentage-of-recovery approach. We will begin with that as our primary basis to evaluate the requested fee and then consider the lodestar method as a cross check.

### A. Percentage of recovery

The Third Circuit has identified ten factors to consider when assessing the reasonableness of an attorney's fee award in a common fund case:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs" counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs Prod. Liab. Litig.,* 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 197-200 (3d Cir. 2000); *In re Prudential*, 148 F.3d at 336-40)). These factors are not exhaustive, and a district court should consider "any other factors that are useful and relevant with respect to the particular facts of the case." *In re Diet Drugs*, 582 F.3d at 541 n.34 (quoting *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 166 (3d Cir. 2006)). These factors, which we are not required to apply formulaically, should instead assist in "evaluat[ing] what class counsel actually did and how it benefitted the class." *Prudential*, 148 F.3d at 342; *Rite Aid*, 396 F.3d at 301.

In this case, the total Settlement Fund to which BIG has agreed is $3,300,000. Of that total, $500,000 is being awarded to the Rule 23(b)(2) Subgroup Settlement Class Members to

be distributed equally on a *pro rata* basis and $1,500,000 is being awarded to the Automatic Payment Settlement Class Members in the "points" system described above, for a total of $2,000,000 in monetary compensation to the members of those two classes. The injunctive relief secured in this case, consisting of an important practice change made by BIG, does not have a monetary value associated with it but reflects a benefit secured for the Injunctive Relief Settlement Class Members. The attorneys seek an award of $1,035,000 in attorneys fees and costs. Mem. in Supp. of Mot. for Attorneys' Fees at 1.[6] Thus, counsel's award would represent 31% of the full Settlement Fund.

We proceed to assess the factors outlined above.

### (1) The Size of the Fund Created and the Number of Persons Benefitted

This factor weighs in favor of the fee award. The fund created is worth $3,300,000 and was intended to benefit a class of as many as 87,969 people to whom notice was mailed about their inclusion in the Automatic Payment or the Rule 23(b)(2) Subgroup settlement classes.. Of that number, the members of the Automatic Payment Settlement Class (821 at the time of Plaintiff's filing) are slated to receive a direct payment in the range of $1,100 to $21,994 each. In addition, the 5,409 members of the Rule 23(b)(2) Subgroup Settlement Class who had submitted valid claim forms will receive approximately $92 each. The remaining members affected by this litigation, those in the Injunctive Relief Class, do not receive monetary compensation but neither do they release any individual damages claims. Rather, they remain free to litigate individually against BIG for any FCRA violations.

---

[6] Other expenditures from the Settlement Fund include notice and settlement administration fees (capped at $250,000) and the individual settlement and service award to Mr. Kelly in the amount of $15,000.

**(2) The Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or Fees Requested by Counsel**

This factor also weighs in favor of the fee award. "The absence of large numbers of objections mitigates against reducing fee awards." *In re Cendant Corp.*, 232 F. Supp.2d 327, 337 (D.N.J. 2002). Here, out of nearly 260,967 class members who are believed to have received notice, only five members opted to exclude themselves from the settlement. While 34 submitted correspondence to the Court that was docketed, only one class member made any reference to the fee request. That objector, a member of the Injunctive Relief Settlement Class, stated his belief that his "credit history" had been shared with employers "without his consent" and that this accounted for his failure to be selected for sales and finance jobs to which he had applied. (Doc. 108.) He objected that the members of the Injunctive Relief Settlement Class were not receiving monetary compensation as Mr. Kelly would, that it was difficult to ascertain the terms of the Settlement Agreement, and that:

> The lawyers did nothing to inform the class members about the value of the settlement (excepting a vaguely written notice attached) and agreed to a settlement giving the class members nothing of monetary value except the opportunity to come out of pocket and sue individually.

(Doc. 108 at 1.) He contends that the counsel fee of 33% is "unreasonable in light of [his] arguments." (*Id.* at 2.)

We do not share that class member's view about the amount of work performed by Plaintiff's counsel or the value of the benefits that counsel secured for the class members. As set forth above, those members who met the criteria for inclusion in the Rule 23(b)(2) Subgroup or the Automatic Payment Settlement Classes will receive monetary compensation. The amount of compensation corresponded with the likelihood that they had a strong claim under the FCRA and that was within the statute of limitations. In addition, for the benefit of all class

members, class counsel has successfully negotiated a settlement whereby BIG will change its practices going forward for a period of at least five years, providing to class members and future consumers same-time mailed notice of the production of a credit report to an employer that contains adverse public record information. The objector fails to appreciate the benefits that were secured for others as well as those from which he will benefit. In light of the benefits to all three classes, we cannot say that an attorney fee of 31% of the monetary award is unreasonable as the objector believes. We therefore find that the second *Gunter* factor also supports the attorneys' fees requested.

### (3) The Skill and Efficiency of the Attorneys Involved

The attorneys in this case were skilled and efficient and merit 31% of the value of the fund in fees. As have other courts, we measure the skill and efficiency of class counsel by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case, and the performance and quality of opposing counsel. *See, e.g., Bredbenner v. Liberty Travel, Inc.*, No. Civ.A. 09-1248MF, 2011 WL 1344795, at *20 (D.N.J. Apr. 8, 2011). Class counsel here are highly skilled and experienced in consumer class actions. *See* Francis Decl. (Doc. 149-2); Bennett Decl. (Doc. 149-7); Kelly Decl (Doc. 149-8). *See also* Mem. in Supp. of Mot. for Attorneys' Fees at 6 n.3 (noting the many FCRA cases in which counsel have represented plaintiffs). They faced many challenges in the early stages of litigation, as BIG presented legal challenges to Plaintiff's theories of recovery on the § 1681k claim, the first of which was successful until remedied with an amended complaint. Counsel have represented that BIG also vigorously asserted its interests in the mediation stage. Despite these obstacles, class counsel have achieved a favorable result for class members. They have

also presented the Court with the information necessary to consider the propriety of the proposed settlement and have responsibly addressed the questions and concerns raised by class members during the objection period, as Attorney Searles described at the Final Approval Hearing. *See also* Doc. 148-3 (documenting objections and actions taken by class counsel). These considerations also weigh in favor of the fees requested.

### (4) The Complexity and Duration of the Litigation

This litigation has been sufficiently complex and lengthy to support $1,035,000 in attorneys' fees. The litigation began over three years ago. Class counsel was required to amend the complaint in order maintain a potential class action under § 1681k. They also had to investigate extensively and review much discovery in order to ascertain the appropriate size and scope of the potential classes. As a result of the mediation process, three classes emerged, each with a different bundle of harms suffered and compensation to be awarded.

### (5) The Risk of Nonpayment

There was some risk of nonpayment for the attorneys in this litigation. "Courts consider the risk of non-payment in light of the Defendant's ability to satisfy an adverse judgment, or the risk of establishing liability at trial." *Bredbenner*, 2011 WL 1344795, at *20 ("[C]lass counsel faces a risk of non-payment due to the difficulty of establishing liability at trial. Class counsel has prosecuted this case on a contingent basis, with no retainer."). As previously stated, Plaintiffs in this case would have to prove that BIG did not maintain "strict procedures" designed to insure that the adverse public record information it reported was "complete and up to date." 15 U.S.C. § 1681k(a)(2). They would also have to prove the willfulness of BIG's alleged violation in order to recover statutory, as opposed to actual, damages. Because of the risk that they may not be able to do so, this consideration also indicates that substantial

attorney's fees should be awarded with settlement approval.[7]

### (6) The Amount of Time Devoted to the Case by Plaintiff's Counsel

Plaintiff's counsel spent significant, but not excessive, time on this case: 945.3 attorney hours in total. As previously detailed, this litigation began over three years ago and Plaintiff survived Defendant's second attempt to dismiss the § 1681k class claim. Plaintiff's counsel conducted investigation and reviewed discovery in order to come to an understanding of the scope of the potential class claims and how best the classes might be defined. Plaintiff's counsel then wisely invested the necessary time in the mediation process in order to reach a resolution with BIG and avoid the additional costs (and not insignificant risks) of proceeding towards trial, with the prospect of further dispositive motions and opposition to his class certification motion. This factor weighs in favor of approving the requested fee.

### (7) The Awards in Similar Cases

The award in this case is in line with awards in similar cases in terms of the percentage of total recovery. "In common fund cases, fee awards generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund." *Bredbenner*, 2011 WL 1344795, at *21 (citing *In re General Motors Corp. Prod. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990)). As stated above, the fee award requested here represents 31% of the total settlement fund. This percentage is not excessive or unreasonable, and this factor weighs in favor of approval of Plaintiff's attorney's fees request.

---

[7]  To the extent that there is no evidence of record regarding BIG's ability to satisfy an adverse judgment had the case gone to trial, this factor is neutral.

**(8) The Value of Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Other Groups**

All of the benefits obtained for class members are due to the efforts of class counsel. No government agencies or other groups conducted investigations or contributed to this settlement. Mem. in Supp. of Mot. for Attorneys' Fees at 9. Therefore, this factor supports a substantial fee award for class counsel.

**(9) The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement at the Time Counsel Was Retained**

In this case, the settlement agreement obligates BIG to pay $3,300,000 to settle the claims set forth by the Settlement Classes, thus creating the Settlement Fund. Sett. Agreement ¶ 2.4 (Doc. 99-2). The parties agreed that the Fund would disburse an aggregate amount of $2,000,000 to the class members, a $15,000 service award to Mr. Kelly (subject to the court's approval), up to $250,000 to the claims administrator, and "attorneys' fees and costs not in excess of thirty-three percent (33%) of the Settlement Fund, as awarded by the Court[.]" *Id.* ¶ 2.4.1.

Contingency fees representing 30% to 40% of recovery are fairly typical. *See, e.g., In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (citing cases). Here, class counsel's request for attorney's fees equivalent to 31% of the monetary benefits obtained for the class is within this range. Moreover, counsel obtained injunctive relief that cannot be monetized. Although Plaintiff asserts that this consideration is a non-factor in this case, *see* Mem. in Supp. of Mot. for Attorneys' Fees at 9, we find that it supports the fee request.

### (10) Any Innovative Terms of Settlement

The settlement achieved is innovative in that it has brought about a change in BIG's practices that will address an important aspect of the complaint of Mr. Kelly and other class members: the Settlement Agreement obligates BIG to implement very specific policies and procedures to notify consumers that public record information obtained from Trans Union is being reported about them and that this notification be made at the same time that the information is reported to the purchaser of the background report. Pursuant to the Injunctive Relief Order that the Court will issue, Settlement Class Members will also have a mechanism to resolve any disputes they have about BIG's compliance with the notice provisions of the Settlement Agreement. Moreover, the settlement achieved this change to BIG's practices without requiring the majority of class members to forego their right to sue BIG for actual damages. Only the members of the Rule 23(b)(2) Subgroup Settlement Class additionally waive individual claims under § 1681k and the members of the Automatic Payment Settlement Class waive all possible FCRA claims against BIG arising from the specified time period. Given these achievements, this factor also counsels in favor of granting the attorney's fees request.

Plaintiff's request for an award of fees and costs calculated as a percentage of the monetary value of the Settlement Fund is not unreasonable under these factors and given our evaluation of "what class counsel actually did and how it benefitted the class." *Prudential*, 148 F.3d at 342. We proceed to consider the lodestar cross-check.

### B. Lodestar

A lodestar award is calculated by multiplying the number of hours reasonably worked on the case by an hourly billing rate that is reasonable given the geographical area, the nature

of the services provided, and the experience of the attorneys. *See In re Rite Aid*, 396 F.3d at 305. The lodestar for all counsel here, set forth in counsel's declarations appended to the Motion for Attorneys' Fees and Reimbursement of Expenses, is $484,543.50 in attorney and paralegal time, and $11,484 in unreimbursed costs, for a total of $496,027.50 in fees and costs.

### 1. Hourly rate

To determine if the rate charged is reasonable, as described above, we must assess the experience and skill of Plaintiff's attorneys and examine the market rates in the relevant community or communities "for lawyers of reasonably comparable skill, experience and reputation.'" *Reibstein*, 761 F. Supp.2d at 259 (quoting *Perry*, 229 F.R.D. at 119).

In this case, three law firms seek fees. Francis & Mailman, P.C., which acted as Lead Class Counsel, bills from $180 per hour for paralegals to $225-$725 for attorneys. Francis Decl. (Doc. 149-2) at ¶ 15 & append. sched. Consumer Litigation Associates, P.C., bills from $200 per hour for paralegals to $450-$650 for attorneys. Bennett Decl. (Doc. 149-7) at append. sched. Kelly & Crandall, PLC, bills $165 per hour for paralegal work and $225-$450 for attorney time. Kelly Decl. (Doc. 149-8) at ¶¶ 10-14 & append. sched. The firms stated that they charged the same rates in this case as generally to "clients who retain the firm in connection with non-class matters," Francis Decl. ¶ 12, or as have been "most recently approved in a lodestar case," such as one under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, in which Mr. Bennett was involved in the Eastern District of Virginia. *See* Bennett Decl. ¶ 12. *See also* Kelly Decl. ¶ 10 (rate charges "most clients for representation in litigation matters," although most of her work is contingent or brought under a fee-shifting statute).

The Court has carefully reviewed the documentation in support of these fees, including

Plaintiff's motion, counsel's affidavits and aggregate time sheets, and an expert opinion from another attorney regarding the consistency of the Francis & Mailman rates with the Philadelphia market for legal services. The lawyers and staff members of all three firms are deeply experienced in consumer class action litigation, and their skill has been recognized by many other courts. In light of all of this evidence, the Court finds each hourly rate proposed to be reasonable. *See also Flores v. Express Services, Inc.*, 2017 WL 1177098 (using rates of $225 to $725 for attorneys $180 for paralegals and in lodestar cross-check); *Reibstein*, 761 F. Supp.2d at 260 (finding reasonable rates of $650 for partners and $175-$225 for paralegals); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 422 (E.D. Pa. 2010) (finding reasonable rates of $650 for partners and $125-$225 for paralegals).

### 2. Number of hours

The reasonable hours prong requires both that counsel not spend excessive time on a case and that counsel not use "highly priced talent for matters easily delegable to non-professional or less experienced associates." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983).

Here, Francis & Mailman spent 736.9 hours on the case, Francis Decl. at ¶ 7; Consumer Litigation Associates spent 90.8, Bennett Decl.at ¶ 18; and Kelly & Crandall spent 117.6, Kelly Decl. at append. sched. The record indicates that these time expenditures were reasonable. Francis & Mailman was involved from the early stages of litigation and acted as lead class counsel for Plaintiff and the class. To the extent that all of these firms employed the services of partners rather than associates or paralegals, such decisions appear to have been reasonable, particularly in light of the developing nature of the theory of the case. In sum, as with counsel's hourly rates, the hours spent in this litigation were reasonable.

As stated above, calculation of the lodestar requires multiplication of the hours reasonably worked by the reasonable billing rates. These equations result in a lodestar for all counsel of $484,543.50 in attorney and paralegal time. The counsel fee request, excluding the $11,484 sought for costs, is $1,023,516 and results in a multiplier of 2.11.

The Third Circuit recognized in *In re Prudential* that lodestar multipliers "ranging from one to four are frequently awarded in common fund cases." 148 F.3d at 341. Further, a lodestar multiplier "need not fall within any pre-defined range." *AT&T Corp.*, 455 F.3d at 172. In *Rite Aid*, the Third Circuit found no abuse of discretion in the award of a 4.07 multiplier, while remanding the case on a different ground. 396 F.3d at 303-04. Recently, Judge Bartle granted a fee equal to 32.96% of the total common fund, using a lodestar cross-check involving hourly rates similar to those requested here and yielding a multiplier of 4.6. *Flores*, 2017 WL 1177098, *3-4.

We consider the multiplier here to be reasonable in light of the fact that counsel undertook this matter on a contingent fee basis, with the attendant risk of non-recovery; Defendant has not challenged the fee and no Class Member has articulated any basis for an objection to it; counsel demonstrated expertise and efficiency; the Settlement Agreement provides a substantial monetary benefit for members of the Automatic Payment Class and the Rule 23(b)(2) Class; and BIG has agreed to a change in its practices for a period of five years as a result of the Settlement Agreement, which benefits all consumers.

We conclude that the provision for attorneys' fees and costs as laid out in the Settlement Agreement is reasonable and will approve the award on those grounds. Both the percentage-of-recovery method and the lodestar method support the reasonableness of the attorneys' fees requested in this case. We will grant Plaintiff's motion for an award of

$1,035,000 to class counsel.

## VI.     **SERVICE AWARD**

Plaintiff's Counsel also seeks this Court's approval of a service award in the amount of $15,000.00 for Mr. Kelly in light of his willingness to undertake the risks and shoulder some of the burden of this litigation as Class Representative. We are mindful that class action representatives such as Mr. Kelly often forego substantial individual monetary claims for damages in exchange for helping bring about a benefit to a larger class. In this case, there would be no benefit to the particular set of Class Members covered by this Settlement Agreement if Mr. Kelly had not come forward at the time he did. Moreover, consumers who are the subject of future reports that include public record information will benefit from the obligations undertaken by BIG to provide notice in the particular manner described in the settlement agreement for the period of five years.

Mr. Kelly merits a service award in this case. He has participated in the litigation insofar as his allegations and supporting documentation concerning the credit report sold by BIG have been described in and attached to filings in this case, exposing some of the private affairs of himself and a family member. Counsel represented at the hearing that Mr. Kelly has also been available for consultation as necessary on matters of litigation strategy and settlement. In addition, there have been no objections to his award, and the $15,000 sum is within the range of awards approved by courts. *See, e.g., Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 220-21 (E.D. Pa. 2011) (approving $15,000 incentive awards to each of three representative plaintiffs and surveying other cases). *See also* Pl. Mem., Doc. 148-1, at 24 n.5 (listing cases). We will approve the award requested for Mr. Kelly.

# VII.  <u>CONCLUSION</u>

As demonstrated in Section III above, the three classes that will be finally certified satisfy the criteria of Rule 23(a).  The proposed Rule 23(b)(2) Subgroup Settlement Class and the Automatic Payment Settlement Class satisfy Rule 23(b)(3), and the third proposed class, the Injunctive Relief Class, satisfies Rule 23(b)(2).  Therefore, all three proposed classes are appropriate for certification.

We also conclude that the settlement reached on behalf of these three classes is fair, adequate, and reasonable for all of the reasons set out in Section IV above.  After multiple conferences with the parties about the progress of this litigation, two rounds of briefing to address Defendant's efforts to dismiss Plaintiff's class claim, and the recent hearing concerning the proposed settlement and class certification, we are satisfied that the settlement was a result of hard-fought, arm's-length negotiation.  We will enter orders granting Plaintiff's Motion for Final Approval of Class Action Settlement and Plaintiff's Motion for Award of Attorneys' Fees and Reimbursement of Expenses.  We will enter an Injunctive Relief Order that substantially complies with that proposed by Plaintiff.  We will dismiss this case with prejudice pursuant to the parties' agreement.


  /s/ David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE